**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Joseph FRAZIER,
Defendant–Appellant.**

No. 92–9201.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1994.

---

Bruce S. Harvey, Atlanta, GA, for appellant.

Mary Jane Stewart, Asst. U.S. Atty., Atlanta, GA, for appellee.

Before HATCHETT and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

DUBINA, Circuit Judge:

█ Appellant William Frazier ("Frazier") appeals the district court's order revoking his supervised release. Frazier contends that the district court erred in its determination that he violated the conditions of his supervised release. Specifically, Frazier argues that the Federal Rules of Evidence apply to supervised release revocation hearings, and thus he contests the admission and consideration of hearsay testimony at his revocation hearing. We hold that the Federal Rules of Evidence do not apply in supervised release revocation proceedings. In addition, we hold that the admission of hearsay testimony in this case was in error, but that the error was harmless. Therefore, we affirm the district court's revocation of Frazier's supervised release.

## I. *FACTS AND PROCEDURAL HISTORY*

Frazier entered a plea of guilty in July of 1988 to one count of distribution of cocaine. He was sentenced in September of 1988 to three years imprisonment, followed by three years supervised release. He was also ordered to pay a $50 special assessment.

Frazier was the object of an undercover investigation that ultimately led to his arrest in September, 1992. Agent John Harvey ("Agent Harvey") of the Drug Enforcement Administration ("DEA") was the agent in charge of the investigation. Agent Harvey monitored and recorded telephone conversations between an informant and Frazier beginning on or about August 27, 1992. At the revocation hearing, Agent Harvey testified that he listened to the conversations as they were occurring. On some occasions, the informant was with Agent Harvey when the telephone conversations occurred. On other occasions, the informant would call Agent Harvey, or Agent Harvey would call him, then Frazier would be called, and a three-way call would ensue in which Agent Harvey could hear the conversation. Agent Harvey told the informant that he had a recording device on the telephone, and the informant voiced no objection.

In the conversations that Agent Harvey overheard, Frazier spoke of: (1) selling two to three hundred pounds of marijuana to the informant; (2) purchasing four kilograms of cocaine from the informant; and (3) selling the informant first five pounds and then one pound of methamphetamine. It was the methamphetamine deal which culminated in Frazier's arrest.

Agent Harvey met with Frazier on September 9, 1992, in an undercover capacity. Agent Harvey had already obtained a search warrant for Frazier's apartment. When Agent Harvey and the informant arrived at Frazier's apartment complex, the informant first spoke with Frazier alone. Then the informant returned and asked Agent Harvey if he would take the $22,000 he had with him for the deal up to Frazier's apartment. Agent Harvey refused, and instructed the informant to go up to the apartment to see if any drugs were present. The informant and Frazier then left Agent Harvey's view, returning to the lobby area approximately ten

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designa-

tion.

minutes later. The informant met with Agent Harvey; Frazier left Agent Harvey's line of sight. After speaking with the informant, Agent Harvey told the surveillance agents that the drugs were in the apartment, and requested that a couple of agents join him in order to execute the search warrants.

Frazier reappeared, and Agent Harvey and the informant walked over to meet with him. The informant introduced Agent Harvey to Frazier, and Agent Harvey asked him if he wished to count the money. Frazier said that he did not want to count the money in the foyer area because there were too many people around. He asked Agent Harvey and the informant to go up to his apartment. Before they could proceed to the apartment, the surveillance agents arrived and Frazier was arrested.

Frazier was advised of his rights and indicated that he understood them. Shortly thereafter, Agent Harvey identified himself as a DEA agent and told Frazier that he had a warrant to search his apartment. Frazier said, "There's only one thing up there...." Agent Harvey asked him if he was referring to the methamphetamine, and Frazier admitted that he was. Frazier showed the agents a package of drugs. The agents also seized a set of triple beam scales. Frazier even called his source in an effort to assist Agent Harvey. On the way to jail after his arrest, Frazier told Agent Harvey the full name of his source and offered to take agents to his source's house.

On October 26, 1992, the government filed a petition for the revocation of Frazier's period of supervised release, and the district court issued a warrant for his arrest. The basis for the revocation was Frazier's September 9, 1992, arrest for possession with the intent to distribute methamphetamine. The district court held a two-day evidentiary hearing in order to determine whether Frazier's supervised release should be revoked. Over objection from Frazier's counsel, the government solicited testimony from Agent Harvey regarding conversations he had with the informant, and conversations he overheard between Frazier and the informant. The parties filed briefs on the admissibility of hearsay testimony. At the close of the hear-

ing, the district court found that Frazier had violated the conditions of his supervised release, and ordered that he be committed to the custody of the Attorney General for a period of three years. The district court also entered a memorandum opinion holding that the Federal Rules of Evidence do not apply to supervised release revocation proceedings. *United States v. Frazier,* 807 F.Supp. 119 (N.D.Ga.1992). Frazier, who is presently incarcerated, timely appealed.

## II. *STANDARD OF REVIEW*

Whether the Federal Rules of Evidence apply in a supervised release revocation hearing is a question of law, and as such is subject to *de novo* review by this court. *United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1360 (11th Cir.1994). A district court's revocation of supervised release is reviewed under an abuse of discretion standard. *United States v. Copeland,* 20 F.3d 412 (11th Cir.1994); *United States v. Thompson,* 976 F.2d 1380, 1381 (11th Cir.1992).

## III. *DISCUSSION*

### A. *Hearsay Testimony*

The issue of whether the Federal Rules of Evidence apply in supervised release revocation hearings is one of first impression in this circuit. Frazier contends that the Federal Rules of Evidence should be applied in the context of a supervised release revocation hearing, and that had the Rules been applied, Agent Harvey's hearsay testimony would not have been admitted. Frazier presents two arguments in support of his contention. First, he argues that because supervised release revocations are not specifically listed in Rule 1101 of the Federal Rules of Evidence as proceedings with respect to which the Rules of Evidence do not apply, the Rules must necessarily apply. Second, he contends that supervised release is fundamentally different from probation and parole. Thus, although hearsay may be admitted at hearings revoking parole or probation, he claims that it should not be admitted at supervised release revocation hearings. We address each of these arguments in turn.

The Federal Rules of Evidence provide that the Rules apply generally to both civil actions and proceedings, and to criminal cases and proceedings. Fed.R.Evid. 1101(b). However, Rule 1101 specifically delineates a number of proceedings to which the Rules do not apply, including:

> [p]roceedings for extradition or rendition; preliminary examinations in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest; criminal summonses; and search warrants; and proceedings with respect to release on bail or otherwise.

*Id.*, 1101(d)(3). Notably, supervised release revocation proceedings are not included on this list.

The absence of supervised release from Rule 1101 can best be explained by the fact that Rule 1101 was enacted prior to the creation of supervised release.[1] Thus, supervised release could not have been included in Rule 1101 in its original form. Frazier is correct when he points out that the Rule has been amended twice since its inception, once in 1987 and again in 1988, and that supervised release still does not appear in the list of exceptions to the Rules. We do not find the failure to amend Rule 1101 to be dispositive, however, because we believe that Congress considered probation revocation and supervised release revocation to be so analogous as to be interchangeable.

As the Fifth Circuit explained, "[I]n providing for the revocation of supervised release in 18 U.S.C. § 3583(e)(3), Congress provided that the court determination of whether revocation was warranted was to be made 'pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation....'." *United States v. Montez*, 952 F.2d 854, 858 (5th Cir.1992), *quoting* 18 U.S.C. § 3583(e)(3). Furthermore, analysis of the Federal Rules of Criminal Procedure indicates that probation and supervised release

are to be treated similarly. For example, Rule 32.1 provides for the "Revocation or Modification of *Probation or Supervised Release*." (emphasis added). Thus, it is apparent to this court that Congress equated supervised release revocation with probation revocation. Accordingly, the absence of supervised release from Rule 1101 does not change our conclusion that the Federal Rules of Evidence do not apply to supervised release revocation proceedings.

Frazier's second argument is that probation is distinguishable from supervised release, and thus that the rules governing the two proceedings cannot be compared. We disagree. Contrary to Frazier's assertion that supervised release stands in "stark" contrast to probation and parole,[2] courts have recognized that they are in fact conceptually the same. Actually, the courts treat revocations the same whether they involve probation, parole, or supervised release. In *Montez*, for example, the Fifth Circuit held that the justification for not using the exclusionary rule in probation revocations was equally applicable to supervised release revocation hearings. *Montez*, 952 F.2d at 858. *See also United States v. Kindred*, 918 F.2d 485, 486 (5th Cir.1990) (relying on cases involving parole and probation revocation in holding that the admission of a urinalysis report in a supervised release proceeding did not violate the defendant's Sixth Amendment right of confrontation). Similarly, in *United States v. Stephenson*, 928 F.2d 728, 731–32 (6th Cir. 1991), the court apparently drew no distinction between probation, parole or supervised release when it cited cases involving both probation and parole to decide issues involving supervised release. Specifically, the court held that because revocation proceedings are more flexible than trials, a "judge may consider hearsay if it is proven to be reliable." *Id.* at 732. In sum, we find no significant conceptual difference between the

---

1. Congress created supervised release in 1984. *See* 18 U.S.C. § 3583.

2. Frazier argues that these concepts are distinct because probation and parole were granted as a matter of grace, and were not supervised by the judicial branch, whereas supervised release is

mandatory and is administered by the court. This distinction is neither significant nor persuasive. Although the administration of supervised release is somewhat different than that of probation and parole, the purpose and theory of all three types of release are essentially identical.

revocation of probation or parole and the revocation of supervised release.

Moreover, the First Circuit, without relying upon the probation/parole analogy, has noted that the Federal Rules of Evidence do not apply in supervised release revocation proceedings. The court stated that evidence considered in supervised release revocation hearings "need not satisfy the tests of admissibility set forth in the Federal Rules of Evidence, *which do not apply....*" *United States v. Portalla*, 985 F.2d 621, 622 (1st Cir.1993) (citations omitted, emphasis added). Therefore, for all of the foregoing reasons, we hold that the Federal Rules of Evidence do not apply in supervised release revocation proceedings.

**B.  *Grounds for Revocation***

■ Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic. Defendants involved in revocation proceedings are entitled to certain minimal due process requirements. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation). Among these minimal requirements is the right to confront and cross-examine adverse witnesses. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604.

■ Fed.R.Crim.P. 32.1, which applies to supervised release revocation, incorporates these same minimal due process requirements. *United States v. Martin*, 984 F.2d 308, 310 (9th Cir.1993). Indeed, "[t]he same protections granted those facing revocation of parole are required for those facing the revocation of supervised release." *Copeland*, 20 F.3d at 414; *United States v. Copley*, 978 F.2d 829, 831 (4th Cir.1992). Thus, in deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. *United States v. Penn*, 721 F.2d 762, 764 (11th Cir.1983); *Martin*, 984 F.2d at 310; *Kindred*, 918 F.2d

at 486. In addition, the hearsay statement must be reliable. *Stephenson*, 928 F.2d at 732.

■ In the present case, the district court erred because it did not engage in this balancing test. *See United States v. Zentgraf*, 20 F.3d 906 (8th Cir.1994). Apparently, the district court thought that in order to admit the hearsay it was sufficient to simply determine that the Federal Rules of Evidence did not apply to supervised release revocation proceedings. The district court made no finding that the hearsay was reliable, nor did it weigh Frazier's right of confrontation against the government's reasons for not producing the witness.[3] The district court's failure to make such findings constitutes error; Frazier's due process rights were violated.

Nevertheless, we find the error to be harmless because the properly considered evidence overwhelmingly demonstrated that Frazier breached the terms of his supervised release. Specifically, the statements made by Frazier to Agent Harvey, coupled with the contraband seized in Frazier's apartment, constituted sufficient evidence for the district court to revoke Frazier's supervised release.

## IV.  *CONCLUSION*

In conclusion, we hold that the Federal Rules of Evidence do not apply in supervised release revocation hearings. Furthermore, we hold that although the district court erred by failing to establish both the reliability of the hearsay testimony and the government's good cause for not producing the witness, the error was harmless. Therefore, the order revoking Frazier's supervised release is affirmed.

AFFIRMED.

---

**3.** Presumably, the government did not have good cause for the absence of the informant, as neither the court nor the government made reference to any such excuse.