[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16186
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 11, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-20494-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE MORRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

(July 11, 2005)

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

George Morris, a federal prisoner, appeals the district court's revocation of

his probation for his underlying conviction for uttering and possessing counterfeit

obligations of the United States with intent to defraud. Although the district court erred in failing to expressly determine the reliability of the hearsay evidence and weigh Morris's confrontation rights against the government's reasons for failing to produce the witness, the error, if any, was harmless. The record also contained a written report concerning the same subject matter that, as a business record, bears significant indicia of reliability. Accordingly, we **AFFIRM**.

## I. BACKGROUND

In 2002, Morris, pursuant to a written plea agreement, pleaded guilty to one count of uttering and possessing counterfeit obligations of the United States, with intent to defraud, in violation of 18 U.S.C. § 472. The district court sentenced Morris to four years of probation. The conditions of the probation included, *inter alia*, that: (1) Morris was not to use any controlled substance, except as prescribed by a physician; and (2) Morris was to reside at and participate in the Community Corrections Center ("CCC" or "halfway house") for a period not to exceed 120 days, or until otherwise released at the direction of the U.S. Probation Officer.

On 31March 2004, the probation office notified the district court that Morris had violated the terms of his probation by unlawfully possessing or using a controlled substance. The probation office noted that Morris's urine sample had tested positive for cocaine and that, upon questioning, Morris had admitted to

using cocaine on 16 and 23 February 2004. The probation officer recommended that Morris's probation be modified to require 30 days in a comprehensive sanction center, followed by 90 days in the CCC, followed by 60 days on electronic monitoring. The court authorized the modification.

On 18 August 2004, the probation office notified the court that Morris had again violated the terms of his probation. The report included the February 2004 positive urine sample, and also stated that Morris had failed to participate in the CCC. It stated that, on 15 July 2004, Morris was unsuccessfully discharged from the center for being "unaccountable." R1-25 at 1. The probation officer recommended that the court revoke Morris's probation. The court issued a summons.

A hearing was held regarding the revocation of Morris's probation. The court noted that the violations included (1) Morris's admission that he used cocaine on two occasions in February, and (2) his alleged failure to participate in the CCC. At first, Morris stated that he admitted the violations and wished to proceed to sentencing. However, when asked whether he had any questions, Morris stated that officials had just decided that he should be expelled from the halfway house and that it was "kind of like an open and shut case on my part." R1 at 5. When the district court asked Morris whether he was saying that he wanted

3

to contest the violations, Morris stated that he wanted to admit to the positive urine test violation but contest the violation concerning his discharge from the CCC.

The government called to the stand U.S. Probation Officer Donald Harrell, who had been Morris's probation officer since he was sentenced. Harrell testified that he was notified by Melissa Bohler, Harrell's case manager at the CCC, that on 14 July 2004, Morris was allowed to sign out to go to a doctor's appointment. The CCC had a requirement that all participants must call the center upon their arrival at and before their departure from the office. Bohler informed Harrell that, on 14 July, Morris signed off for his doctor's appointment and was supposed to report to work at 12:30. Bohler stated that Morris failed to call upon his arrival at the doctor's office and upon his departure from the doctor's office. He also failed to call upon his arrival at work. Bohler told Harrell that she placed a random call to his employer at 3:00 and was advised that Morris was not there and was due back to work at 4:00. Bohler told Harrell that Morris was "unaccountable" during the time he left the CCC. R1 at 8.

Harrell further testified that Bohler told him about a subsequent incident on 15 July 2004. Morris was signed out to go to work at 12:00 noon and was to attend a treatment session after work. At 12:30, it was discovered that Morris had

4

not called upon his arrival at work and had not called to report that he left work to attend his treatment session. A random call was placed to his employer at 12:35, and the employer advised that Morris had already left for the day. Bohler stated that, at 2:15, Morris called the case manager and stated that he was still at work and that his treatment session had been cancelled. Bohler ordered Morris back to the CCC. Upon his arrival, the CCC terminated him from the program. Bohler indicated to him that Morris was discharged from the CCC on 15 July. Harrell testified that Morris had not completed his court-ordered term at the CCC at that time.

On cross-examination, Harrell testified that he did not have personal knowledge of the events that occurred on 14 and 15 July 2004, and that his information came from what Bohler had told him and from a written report that she submitted. The written report was entered into evidence.[1] When asked whether he knew who Bohler spoke to when she called to "check up" on Morris's location, Harrell stated that he did not know the specific person, but that Bohler stated that she had called Morris's employer. R1 at 12.

---

[1] It appears that the written report was not included in the record on appeal. See generally R1. However, the government has attached the report to its brief. See Appellee's Brief at Appendix A. Morris has not submitted a reply brief challenging the authenticity of the appended report. Bohler's report was consistent with Officer Harrell's testimony. See id.

The government rested its case, and the defense rested without presenting any evidence or witnesses. Morris then argued that the hearsay testimony of the probation officer, who admittedly had no personal knowledge of the events in question, was not sufficient to satisfy the government's burden to prove Morris guilty of the violations. He asserted that "there was some successful time in the halfway house and it appears to be just a misunderstanding that could have been resolved that didn't need to result in a violation." R1 at 13.

The district court noted that it had only the evidence presented by the government to base its decision on, stating, "There was no evidence challenging what happened." The court found that the government had met its burden of proving the violations by a preponderance of the evidence. The court noted, "When the evidence is not challenged, the matter of hearsay is not really that significant. If he took the stand and testified to facts [to the] contrary, then we'd have to consider the weight of the hearsay, but in this case there was no such challenge." R1 at 14.

The court stated that the guideline imprisonment range was 4 to 10 months. Morris requested a sentence that did not include incarceration, perhaps including electronic monitoring instead. The government requested a sentence of four months' imprisonment, noting that there were two violations, one admitted and

6

one contested. The district court revoked Morris's probation and sentenced him to 6 months' imprisonment, followed by 30 months of supervised release. This appeal followed.

## II. DISCUSSION

On appeal, Morris argues that the district court denied him due process when it found that he violated the terms of his probation based upon "unreliable hearsay." Appellant's Brief at 9. Morris does not dispute that the district court was permitted to consider hearsay evidence in the probation revocation hearing, but rather claims that its discretion was not unlimited and that the hearsay in his case was unreliable. Morris notes that the Supreme Court recently addressed the reliability of hearsay evidence in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Morris asserts that the hearsay evidence was unreliable because the only evidence before the court was the testimony of Harrell, who admitted that he had no personal knowledge of the facts and who based his entire testimony on information he received from Bohler. He argues that Bohler was not called as a witness and there was no evidence that she was unavailable. He further argues that the information Bohler related to Harrell was received by a "completely unidentified" third party at Morris's office. Id. at 10. Finally, Morris

asserts that the district court "improperly relied upon the fact that [he] did not testify during the proceedings. Id. at 10-11.

We review a district court's decision to revoke a defendant's probation for an abuse of discretion. United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994).[2]

The Federal Rules of Evidence do not apply in supervised release revocation hearings. Id. at 114. However, defendants in probation and supervised release revocation proceedings are entitled to "certain minimal due process requirements" including the right to confront and cross-examine witnesses. Id. In determining whether to admit hearsay testimony, the district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." Id. This includes making a finding that the hearsay was reliable and weighing the defendant's right of confrontation against the government's reasons for not producing the witness. Id. However, the district court's failure to make such findings, although erroneous, is subject to harmless error review. Id.

---

[2] Although Frazier deals with the revocation of supervised release, probation revocation and supervised release revocation are "so analogous as to be interchangeable" and there is "no significant conceptual difference" between the two. Frazier, 26 F.3d at 113-14.

This case is very similar to <u>United States v. Lora</u>, No. 00-15420 (11th Cir. 2001), <u>See</u> Appellee's Brief, Appendix B. Although the opinion is unpublished and, therefore, not binding on us it is useful for purposes of consistency. In <u>Lora</u>, the defendant's probation officer testified that Lora had violated the conditions of his supervised release by, <u>inter alia</u>, failing to participate in the Comprehensive Sanction Center. The district court admitted the probation officer's testimony that Lora did not complete the program, failed to follow the procedures of the program, and was discharged from the program. The probation officer's testimony relied upon a summary report provided to him by Lora's case manager at the Comprehensive Sanction Center.

In <u>Lora</u>, we held that, although the district court erred in failing to make express findings on the record under the <u>Frazier</u> balancing test, the error was harmless. We held that the case manager's report to the probation officer, which was an official report regularly kept in the course of the center's business, bore significant indicia of reliability and was admissible as a business records exception to the hearsay rule under Fed.R.Evid. 803(6). We also noted that Lora never disputed that he was terminated from the Comprehensive Sanction Center before completing the program.

The instant case is indistinguishable from Lora.  Although the district court in the instant case made no specific findings concerning the reliability of the hearsay and did not expressly balance Morris's right to cross-examination against the government's reasons for failing to produce the witness, the error, if any, was harmless.  Bohler's written report on the violation, which provided the basis for and was essentially the same as Officer Harrell's testimony, was entered as evidence at the hearing without objection.  See R2 at 11; see also Appellee's Brief at Appendix A.  This report, like the report in Lora, "bears significant indicia of reliability" and, even in a criminal proceeding where the Federal Rules of Evidence apply, would have been admissible as a business records exception to the hearsay rule under Fed.R.Evid. 803(6).  See Lora,  Appellee's Brief, Appendix B at 4.  Additionally, Morris, like Lora, never disputed that he was terminated from the CCC before completing the program.  See id. at 5; see generally R2.

To the extent that Morris relies upon the Supreme Court's Crawford decision, that decision is inapplicable to his situation.  Crawford dealt with an initial criminal proceeding, not a revocation of probation or supervised release, and was based upon the defendant's Sixth Amendment Confrontation Clause right. Crawford, 541 U.S. at 38, 124 S.Ct. at 1357.  However, the Sixth Amendment right to confrontation is specifically limited to "criminal prosecutions."  Id.; see

10

<u>also</u> U.S. Const., amend. VI.  The Supreme Court previously has held that the revocation of parole is not a part of a criminal prosecution.  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).  Although we have not had an opportunity to address the issue, two Circuits have held <u>Crawford</u> inapplicable to probation or supervised release revocation hearings.  <u>See</u> <u>United States v. Aspinall</u>, 389 F.3d 332, 342-43 (2d Cir. 2004); <u>United States v. Martin</u>, 382 F.3d 840, 844 & n.4 (8th Cir. 2004).

Finally, we conclude that Morris's argument that the district court improperly relied upon the fact that he did not testify is without merit.  Although the court commented that Morris had not taken the stand, an examination of this comment in context reveals that the district court was saying that Morris had not presented any evidence at all to dispute the evidence that the government had presented and, therefore, the government had met its burden to prove the violation by a preponderance of the evidence.  The court was not focused on Morris's failure to testify, but rather his failure to present any evidence at all to refute the government's claims.

### III. CONCLUSION

Based on our review of the record and Morris's arguments, we cannot conclude that the district court erred in revoking his probation. Accordingly, we **AFFIRM.**