[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15934
Non-Argument Calendar

_____

D.C. Docket No. 94-00102-CR-MHS-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SYLVESTER LEE HENDRICKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 20, 2005)

Before ANDERSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Sylvester Lee Hendricks appeals the district court's revocation of his second term of supervised release, pursuant to 18 U.S.C. § 3583(e), which was based on the court's determination that Hendricks violated a condition of his supervised release by knowingly associating with at least one person who was a convicted felon.[1]  Hendricks argues on appeal that the court abused its discretion in revoking his supervised release because the court either did not require a showing that he knew that a person he associated with was a convicted felon, or it relied on insufficient evidence in finding that Hendricks had such knowledge.  For the reasons set forth more fully below, we affirm.

In September 1994, Hendricks was sentenced to 78 months' imprisonment, 3 years' supervised release, and a $1,500 fine for possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  As standard conditions of his supervised release, the court ordered that he "not associate with any persons engaged in criminal activity, and [] not associate with any person convicted of a felony unless granted permission to do so by the probation officer."  In February 2000, following a hearing, the court found that Hendricks had violated a term of his supervised release, revoked his original term of supervised release, and

---

[1]  Upon finding that a defendant violated a condition of supervised release, a district court may, among other options, revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release.  See 18 U.S.C. § 3583(e)(3).

sentenced him to six months' imprisonment, to be followed by an additional term of two years' supervised release. In January 2003, Hendricks again was released from incarceration and began serving his second term of supervised release.

In June 2004, the government filed a petition for warrant and order to show cause why this second term of supervised release should not be revoked, based on Hendricks's committing the new state offenses of obstructing police officers, possession of marijuana, possession of a firearm by a convicted felon, and theft by receiving stolen property, as evidenced by his arrest by the Dekalb County Police Department on May 19, 2004. In July 2004, at an evidentiary hearing on these alleged violations, Hendricks admitted that he was driving the vehicle used in the commission of the charged offenses on which this petition was based, but he, otherwise, denied involvement in the new offenses. The government, thereafter, called as witnesses Kevin Roy White, the Dekalb County Police Officer who arrested Hendricks for the above-referenced offenses, and Shelley Jones, Hendricks's probation officer.

Officer White testified that, on the evening of Hendricks's arrest, Officer White and other officers were on patrol when Officer White observed a person, who was later identified as Michael Beaks, walk away from the police vehicle. After the police stopped Beaks to question him, Beaks informed them that three

men had just approached him in a red Ford Expedition and had robbed him at gunpoint, taking approximately $80 in cash and a cell phone. Beaks described these men, including the clothing each was wearing and the firearms they used against him. In addition, Beaks told the officers that (1) Hendricks was the driver of the vehicle; (2) the front-seat passenger, Kenneth Spearman, got out of the vehicle, pointed a gun at Beaks, and forced him to get into the back seat of the vehicle; (3) James Reid, who was sitting in the back seat, then pointed a gun at Beaks and forced him to hand over his money and cell phone; and (4) the occupants of the vehicle eventually told Beaks to get out of the vehicle and run.

Officer White further stated that, later that same evening, the officers located at a gas station the three men Beaks had described. These men were approximately five miles from where the officers first had encountered Beaks and were dressed in the clothing Beaks had described. When the officers approached these men, Spearman and Reid attempted to flee. The officers, however, eventually apprehended and arrested all of these men.

Moreover, Officer White testified that, on searching the vehicle Hendricks was driving, which was registered to a female friend of Hendricks, the officers recovered three loaded handguns, a cellular phone, and less than an ounce of marijuana from the vehicle. The handguns were recovered specifically from the

4

front passenger seat, albeit under a shirt; in the back seat floorboard; and in the middle crack between the cushions of the back seat. Officer White also stated that, because Beaks ultimately refused to identify any of the recovered items from the vehicle or to press charges, the government dismissed the armed robbery charges against Hendricks, Spearman, and Reed. In addition, Probation Officer Jones testified, presumably to explain why Hendricks did not flee from the officers, that, due to a gun-shot injury, Hendricks would have been unable to run in May 2004.

After hearing arguments from the parties on the alleged violations, the court stated that "I think he is guilty, I think the gun was certainly in his constructive possession." Nevertheless, the court expressed that it was hesitant to find Hendricks in violation of his supervised released based on Officer White's recounting of statements made by Beaks, who may not have been telling the truth. The court, thus, continued the hearing to allow the government the opportunity to locate Beaks and subpoena him. The government subsequently filed an amended petition to revoke Hendricks's supervised release, adding the additional allegations that Hendricks had associated with two convicted felons, that is, Spearman and Reid, and that he had associated with them while they were engaging in criminal activity.

In October 2004, when Hendricks's revocation hearing reconvened, the government called no additional witnesses, explaining that it had been unable to locate Beaks. Instead, the government, over a hearsay objection, admitted copies of Reid's and Spearman's criminal-history reports from the National Crime Information Center ("NCIC reports"). Hendricks responded that the government had failed to show that he knowingly had been in the company of a convicted felon.

Disagreeing with Hendricks's argument, the court stated as follows:

I know if he was in a car with three convicted felons and with his background and with the weapons and so forth, he knew those people were convicted felons, he knew who he was dealing with, so unless you've got something else, I'm going to find that he was in the company of convicted felons, three convicted felons, and that supervised release should be revoked.

The court further explained that, although it did not believe that the evidence in the record established that Hendricks constructively possessed the firearms, the amended allegation of being "in the company of convicted felons" was sufficient to revoke supervised release. The court, therefore, revoked Hendricks's supervised release and sentence him to 18 months' imprisonment, with no further supervised release to follow.

6

As discussed above, Hendricks argues on appeal that the court erred in revoking his supervised release without first finding that he knew that he was associating with a convicted felon, because this knowledge was an essential element of the alleged violation. In the alternative, Hendricks concedes that the court found that he knew that he was associating with at least one convicted felon, but he contends that this finding was clearly erroneous. In support of this second argument, Hendricks contends that the evidence on which the government relied in establishing the violation (1) was hearsay, (2) only showed that Spearman was a convicted felon, and (3) did not establish that Hendricks knew of the conviction.

As a preliminary matter, to the extent Hendricks's appeal can be construed as challenging the court's admission, over a hearsay objection, of Spearman's and Reid's NCIC reports, the Federal Rules of Evidence do not apply in revocation proceedings. United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994). However,

> the admissibility of hearsay is not automatic. Defendants involved in revocation proceedings are entitled to certain minimal due process requirements. . . . Among these minimal requirements is the right to confront and cross-examine adverse witnesses.

Id. (quotations omitted). "Thus, in deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse

7

witnesses against the grounds asserted by the government for denying confrontation." Id. Moreover, the hearsay statement must be reliable. Id.

In the instant case, the court relied on a copy of Spearman's NCIC report in determining that Hendricks associated with a known convicted felon. We have determined that an NCIC report is hearsay and does not fall within the Federal Business Records Act or any other recognized exception to the hearsay rule. See United States v. Long, 578 F.2d 579, 581 (5th Cir. 1978). Instead, a certified copy of conviction is proper evidence that the defendant violated a state or federal law. See United States v. Hofierka, 83 F.3d 357, 363 (11th Cir. 1996).

However, other than stating that this evidence was hearsay, Hendricks failed to argue in the district court, and has not explained on appeal, either why this evidence was unreliable, or how his interest in confrontation outweighed the government's interest in producing this evidence. Indeed, although Hendricks argues on appeal that Reid's NCIC report did not establish that he was a convicted felon, he concedes that Spearman's NCIC report established his status as a felon. The court, therefore, did not err in admitting this evidence.

We review a district court's revocation of supervised release for an abuse of discretion. Frazier, 26 F.3d at 112. As discussed above, a district court may revoke a term of supervised release if it "finds by a preponderance of the evidence

8

that the person violated a condition of supervised release." United States v. Almand, 992 F.2d 316, 318 n.6 (11th Cir. 1993) (quoting 18 U.S.C. § 3583(e)(3)); see also United States v. Robinson, 893 F.2d 1244, 1245 (11th Cir. 1990) (holding in a review of a probation revocation that "all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required" (quotation omitted)).[2]  Moreover, "[a] district court's findings of fact are binding on this [C]ourt unless clearly erroneous."  Almand, 992 F.2d at 318 (quotation omitted)

In revoking Hendricks's supervised release, the district court found that "I know if he was in a car with three convicted felons and with his background and with the weapons and so forth, he knew those people were convicted felon, he knew who he was dealing with . . .."  Thus, contrary to Hendricks's argument on appeal, the record reflects that the court found that Hendricks knew that he was associating with at least one convicted felon.  We, therefore, only review this factual finding for clear error, and we need not determine whether the violation at issue is viable without a showing of knowledge on the defendant's part.  See id.

---

[2]  We have concluded that the analysis of the revocation proceedings relating to probation and supervised release are "essentially the same."  See Almand, 992 F.2d at 318 n.5.

9

Furthermore, Hendricks has failed to show that this factual finding was clearly erroneous. Hendricks's supervised release was based on his conviction for possessing a firearm as a convicted felon. Officer White testified at Hendricks's initial revocation hearing that Beaks reported that Hendricks, Spearman, and Reid robbed him at gunpoint. Beaks told Officer White what clothing these men were wearing, the vehicle they were driving, and the firearms they used. Officer White also stated that, when he and the other officers stopped this vehicle that same evening, approximately five miles from where they first encountered Beaks, Hendricks was driving the vehicle and the men inside it matched the descriptions given by Beaks. In addition, the officers recovered from this vehicle marijuana and three firearms, including one on the seat next to Hendricks, albeit underneath a shirt. Thus, the court did not clearly err in finding that Hendricks had the requisite knowledge. See Almand, 992 F.2d at 318.[3]

---

[3] To the extent the government has responded that the court did not abuse of discretion because the government also established by the preponderance of the evidence that Hendricks violated the conditions of his release by associating with persons who were in engaged in criminal activity, we may affirm a district court's decision based "on a ground other than that upon which [the district court] based its decision." See United States v. Simmons, 368 F.3d 1335, 1342 (11th Cir. 2004) (upholding an upward departure based on other grounds). Nevertheless, because, as discussed above, the district court did not abuse its discretion in revoking Hendricks's supervised release based on his knowing association with at least one convicted felon, we need not determine whether this other violation was established.

Accordingly, we conclude that the district court did not abuse its discretion in revoking Hendricks's supervised release. We, therefore, affirm.

**AFFIRMED.**