[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14469
Non-Argument Calendar

_____

D. C. Docket No. 05-00028-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWN DEMETRIUS CROSKEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(January 28, 2009)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Shawn Demetrius Croskey appeals from the district court's judgment revoking his supervised release. He argues that an eyewitness's out-of-court photographic identification of him as an armed robber was unreliable and violated due process. For the reasons set forth below, we affirm.

**I.**

In February 2005, a federal grand jury returned a three-count indictment against Croskey, charging him with assault of an individual in possession of U.S. money or property with intent to rob that individual of such money or property, in violation of 18 U.S.C. §§ 2114(a) and 2 (Count One); use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three). Croskey pled guilty to Count Three of the indictment, pursuant to a written plea agreement. On August 1, 2005, the district court sentenced Croskey to 37 months' imprisonment, to be followed by a 3-year period of supervised release. The terms of the court's supervised release, inter alia, prohibited Croskey from committing another federal, state, or local crime and from possessing a firearm.

Following Croskey's release from custody, the probation officer petitioned the district court to revoke Croskey's supervised release. The probation officer alleged that Croskey violated the above two conditions of his supervision based on

2

the following conduct:

> On May 9, 2008, Shawn Croskey was arrested by the Montgomery Police Department and charged with Robbery 1st Degree. The victim advised that Croskey and another unknown subject forcibly entered her residence on or about April 25, 2008 through the rear door, produced a weapon, and demanded currency. The victim advised that both Croskey and the other subject produced handguns and repeatedly demanded currency and ordered her to turn off her home alarm.

At the revocation hearing, Croskey denied the allegations in the petition and, therefore, the government proceeded to present evidence supporting the allegations. After setting out the elements of robbery under Alabama law, the government called Detective Jason Brosius of the Montgomery Police Department, who testified as follows. Based on his review of the reports filed in the case, at approximately midnight on April 25, 2008, a man named Clem Hill was shot in the shoulder at his residence in Montgomery, Alabama. Kavonda Hill, Clem's wife, was also at the residence and, although she was not shot, was a witness to the events that transpired.

In order to determine the identity of the two assailants, Brosius investigated a vehicle that was abandoned, with the keys inside, outside of the residence. He discovered that the vehicle belonged to a man named Shun Mathis, whose driver's license photograph did not match the physical description of either of the offenders. Brosius then discovered that Croskey had received traffic citations in

3

that vehicle over the past several months, including one from February 2008 and two from the three days before the incident. Brosius looked at Croskey's photograph, found that he matched the general physical description of one of the offenders, and placed him in a photographic lineup. The government introduced a copy of the photographic lineup, which included six photographs, one of which was a prior arrest photograph of Croskey.

Brosius then spoke with Clem and Kavonda separately. Although Clem could not identify either of the offenders, Kavonda, without hesitation, immediately identified Croskey's photograph and informed Brosius that she was 100% sure that he was one of the offenders. Based on Kavonda's positive identification of Croskey, Brosius obtained a warrant for Croskey's arrest.

On cross-examination, Brosius testified that the abandoned vehicle was parked next door to the Hill residence. Kavonda told the responding officers that she did not recognize the vehicle, and that it was parked in front of an abandoned house. The car had keys in the ignition, and it was parked in a position that was partially blocking traffic.

The government called Kavonda, who testified as follows. On the night of the incident, Kavonda was awake studying and her husband was asleep. After hearing a "boom," the burglary alarm went off, she heard a "pop," and she heard

her husband yell "run." She ran to the front door but, before she could get there, someone pointed a handgun at her and repeatedly told her to turn the alarm off. The man was two feet away from her. Another man then came into the room, pointed a gun at her, and told her to turn off the alarm. Kavonda told them that she had a baby and pleaded with them not to kill her. She thought that her husband was dead because she had heard a gunshot, and was scared that they were going to kill her as well. One of the men responded that, if she wanted her baby, she needed to turn the alarm off. The men demanded money, and Kavonda grabbed her purse and told them that she had $100. The men became anxious because Kavonda had not turned off the alarm, and Kavonda managed to escape out the front door and run towards her neighbor's house. She turned around and saw the men running from the house in the opposite direction. When the police arrived, she described the two individuals to the police.

Kavonda identified Croskey in the courtroom as one of the assailants. She testified that there was "no question in [her] mind, period" that Croskey was one of the offenders, as she did not forget a face, was "wide awake" at the time, and had no reason to accuse the man of anything because he was a stranger. She testified that Croskey was the man who told her to turn the alarm off if she wanted her baby.

The government called Detective Alix Payne, a robbery detective with the Montgomery Police Department. He was in his office when a patrol unit responded to the incident at the Hill residence. Clem informed the responding officers that two unknown men kicked in the rear door of the residence and that one of them shot him while he was lying in bed. Payne then went to the scene and spoke with Kavonda, who was "in a right state of mind," but was angry that the men had kicked in her door and shot her husband. Kavonda told him that she could identify the assailants. There was a vehicle seized near the residence, which was partially blocking the roadway. Although the car was not running, there were keys in the ignition, the "ignition was flipped to on," and the CD player was playing.

Defense counsel did not put on any testimony, but he argued that the photographic lineup was impermissibly suggestive. Although counsel recognized that Kavonda "emphatically" identified Croskey in court, he argued that this was the result of her preliminary identification. Thus, counsel argued that the government had not proven by a preponderance of the evidence that Croskey committed the offense.

The court asked whether the fact that Croskey had recently been driving the car that was abandoned outside of the residence reinforced Kavonda's

identification.   Defense counsel admitted that this coincidence was "peculiar" and constituted circumstantial evidence, but submitted that it did not establish that Croskey committed the offense by a preponderance of the evidence.  The government argued that it had proven beyond a reasonable doubt, a higher standard of proof than required, that Croskey committed first degree robbery.  The government emphasized that Croskey had recently driven the abandoned car and that Kavonda unequivocally identified him as one of the assailants.  Defense counsel replied that the fact that the assailants ran away by foot when they were not being pursued showed that they had no connection with the abandoned car.

The court reconvened the following day and, after summarizing the allegations in the petition and the testimony from the hearing, concluded that the government had shown beyond a reasonable doubt that Croskey was one of the assailants for two reasons:

> First, the Court credits and finds reliable Mrs. Hill's identification of Croskey as one of the perpetrators; second, that Croskey was on the scene of the crime is supported by circumstantial evidence that on April 21, 2005, Croskey drove the car that was seized the night of the robbery on April 25, with the keys still in the ignition, with the ignition turned on, and with the CD player playing.  The second piece of evidence reinforces Mrs. Hill's identification.

Thus, the court found Croskey guilty of the charges in the petition because he had committed robbery under Alabama law and knowingly possessed a firearm.

7

Accordingly, the court revoked Croskey's supervised release and sentenced him to 24 months' imprisonment. Croskey appealed from the judgment.

## II.

"We review the district court's conclusion that appellant violated the terms of his supervised release for abuse of discretion." United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). The district court may revoke a defendant's term of supervised release if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . ." 18 U.S.C. § 3583(e)(3).

## III.

In this case, Kavonda unequivocally identified Croskey in the courtroom as one of the offenders. Indeed, defense counsel acknowledged that Kavonda's in-court identification was "emphatic." In this respect, the district court found Kavonda's identification to be credible, a determination that we ordinarily do not review on appeal. Copeland, 20 F.3d at 413 ("Although the appellant provided contrary evidence, the district court credited the officer's testimony. The credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility."). Not only does Croskey fail to explain why Kavonda's in-court identification was incredible on appeal, but he correctly acknowledged at the revocation hearing that the traffic citations linking

8

him to the abandoned car outside the residence constituted circumstantial evidence of his involvement in the robbery. Thus, the district court correctly found that this circumstantial evidence bolstered Kavonda's identification.

The evidence above – Kavonda's in-court identification and the circumstantial evidence linking Croskey to the robbery – was sufficient for the court to conclude that Croskey violated the terms of his supervision. For this reason, it is unnecessary to address Croskey's contention that Kavonda's out-of-court identification was unreliable and violated due process.[1] See United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994) (concluding that, although the court violated the defendant's due process rights by relying on hearsay, this error was "harmless because the properly considered evidence overwhelmingly demonstrated that Frazier breached the terms of his supervised release"). Accordingly, we affirm.

**AFFIRMED.**

---

[1] Despite doing so in the district court, Croskey does not argue on appeal that any error in connection with Kavonda's photographic identification tainted her subsequent in-court identification. Therefore, he has abandoned any such contention on appeal. United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) (arguments not raised on appeal are abandoned). In any event, we note that we have considered Croskey's arguments challenging the photographic lineup, and they are not persuasive.