[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14458
Non-Argument Calendar
_____

D.C. Docket No. 4:99-cr-10030-CMA-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARVIN SMITH,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2015)

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Marvin Smith appeals from the district court's order revoking his supervised release.  *See* 18 U.S.C. § 3583(e).  In 2000, Smith was convicted, pursuant to a guilty plea, of distribution of cocaine base, for which he was sentenced to serve 151 months in prison followed by a three-year term of supervised release.  He began serving the term of supervised release in January 2013.  In July 2014, a probation officer petitioned to revoke Smith's supervised release, alleging that he violated the conditions of his release by failing to refrain from transgressions of the law.  At the revocation hearing, the government contended that Smith committed the following three violations:  (1) failing to yield to an emergency vehicle, (2) operating a motor vehicle without a valid driver's license, and (3) committing the offense of trespassing.  Based on the testimony of the police officers involved in these incidents, the district court found that the government proved all three violations.  The court sentenced Smith to 14 months' imprisonment, at the top of his advisory guideline range of 8 to 14 months, with no supervised release to follow.[1]  Smith now appeals.

On appeal, Smith contends that the district court erred by admitting hearsay statements from a testifying officer regarding the trespassing violation without first

---

[1]  Smith's violations were all Grade C, and his criminal history category was VI.  *See* United States Sentencing Guidelines Manual § 7B1.4(a).  Smith's 14-month term appears to "incorporate some period of time in a halfway house." (Doc. 217 at 58).

conducting the balancing test required by this Court's precedent.[2]  The government responds that no hearsay was admitted but that even if it had been, any error was harmless.

We review a district court's revocation of supervised release under an abuse-of-discretion standard.  *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). A district court may revoke a defendant's supervised release and impose a term of imprisonment if the court finds, by a preponderance of the evidence, that the defendant violated a condition of his supervised release.  18 U.S.C. § 3583(e)(3); *see* United States Sentencing Guidelines Manual § 7B1.3.

The Federal Rules of Evidence do not apply in supervised-release revocation proceedings, so hearsay statements may be admissible, provided certain minimal due-process requirements are met.  *Frazier*, 26 F.3d at 114.  "Thus, in deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation."  *Id.*; *see also* Fed. R. Crim. P. 32.1(b)(2)(C) (providing that a defendant in revocation proceedings is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear").  The hearsay statements in question must

---

[2] By failing to challenge in his brief the district court's determination on the first two violations, Smith is deemed to have abandoned any challenge on those grounds. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

also be reliable. *Frazier*, 26 F.3d at 114. The court's failure to engage in this balancing test constitutes error and a violation of the defendant's due-process rights. *See id.* Nonetheless, the court's admission of hearsay in revocation proceedings is subject to harmless-error review. *See id.*

A fundamental question, then, is whether the district court actually admitted hearsay. "Hearsay" is defined as a declarant's out-of-court statement offered for the "truth of the matter asserted." Fed. R. Evid. 801(c). Smith argues that the testimony of Officer Ana Nelson, who testified regarding the trespassing violation, contained hearsay from two out-of-court declarants.

At the revocation hearing, with regard to the trespassing violation, Officer Nelson testified that early in the morning on July 11, 2014, she responded to a call about a verbal dispute between two women at apartment 14-E of the Porter Place apartment complex in Key West, Florida. When she arrived on the scene, she first observed a man rounding the corner of a separate building within the complex. She later came to believe that the individual was Smith. She went to apartment 14-E, where she encountered a damaged apartment door and Caridad De Godoy and Shannon Crystal, who were both angry and upset. De Godoy and Crystal lived in the apartment. De Godoy pointed in the direction of the man. Officer Nelson collected a written statement from one woman and conducted a recorded conversation with the other woman.

After speaking with De Godoy and Crystal, Officer Nelson testified, she traveled to a nearby convenience store, where she met two other officers who had been talking to Smith because he contacted the police department regarding the well-being of two children at Porter Place. Officer Nelson ran a check on Smith and determined that he previously had been trespass-warned from all Housing Authority properties, including Porter Place. After Officer Nelson advised Smith of his *Miranda*[3] rights, Smith explained that he went to Porter Place at Crystal's request to pick up the two children from another apartment in the complex. Smith attempted to bring the children to yet another apartment in the complex but was unable to, so he began trying to take them to the children's grandparents. At some point, Smith observed Crystal outside of her apartment and instructed the children to go to her. Smith then went to the convenience store to call the police. Smith told Officer Nelson that he understood that he was not allowed on Housing Authority property, but explained that he would willingly go to jail to ensure the safety of the children.

Notably, at no point in his appellate brief does Smith clearly identify what alleged "hearsay statements" were admitted at the revocation hearing. He suggests that De Godoy and Crystal identified Smith as the person Officer Nelson saw when she first arrived at Porter Place. That may in fact have occurred, but Officer

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

5

Nelson did not so testify at the hearing. Officer Nelson merely stated that she obtained statements from the two women, but, as Smith acknowledges, "the statements were not introduced into evidence."[4] (Appellant's Br. at 6). Rather, Officer Nelson limited her testimony to her perception of their demeanor, her observations at the scene, and her summary of Smith's own statements. And, according to Smith's own statements, which were obtained after he independently made contact with police, he was at several locations within the Porter Place complex while attempting to take care of the two children at Crystal's request. Because he is a party-opponent, Smith's statements to Officer Nelson are, by definition, not hearsay. *See* Fed. R. Evid. 801(d)(2).

Accordingly, the district court did not err by failing to conduct a balancing test before admitting Officer Nelson's testimony. *See Frazier*, 26 F.3d at 113-14. We therefore affirm the court's order revoking Smith's supervised release.

---

[4] Our review of the record indicates that, initially, a possibility arose that hearsay might be relied upon, but that never materialized. Smith initially was charged by the State with burglary and criminal mischief, allegedly based on the witness statements obtained by Officer Nelson from De Godoy and Crystal. At some point, according to Smith, they "recanted" these statements, leading the State to downgrade the charges to trespass. This happened between the filing of the revocation petition in July 2014 and the hearing in November 2014. At the beginning of the revocation hearing, it appears that the government had intended to call De Godoy and Crystal as witnesses but was unable to secure their attendance. Failing that, the government suggested that Officer Nelson was going to testify "not only as to the statements made by the victims of the alleged burglary and trespass, but also testimony regarding her own observations and the statements made by Mr. Smith, himself." (Doc. 217 at 4-5). Smith objected that these statements would be hearsay but the court did not resolve the objection or take any action at the time. Ultimately, however, Officer Nelson limited her testimony to "her own observations and the statements made by Mr. Smith, himself," so no hearsay was admitted and, therefore, no error occurred.

6

**AFFIRMED.**