**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-13527

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JONATHAN YOUNG,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:07-cr-20038-JEM-1

_____

_____

No. 24-13646

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JONATHAN YOUNG,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20055-JEM-1
_____

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Jonathan Young appeals his conviction for possessing ammunition as a convicted felon under 18 U.S.C. § 922(g)(1), as well as the district court's decisions revoking his supervised release and sentencing him to 60 month's imprisonment upon revocation. We reject his efforts to overturn his conviction, as the prosecution offered sufficient evidence to support the jury's guilty verdict. But we agree that the district court failed to follow Federal Rule of Criminal Procedure 32.1 in revoking his supervised release, and imposed an unreasonable sentence following that revocation. We thus affirm his § 922(g)(1) conviction, but vacate the sentence imposed upon supervised release and remand to the district court.

## I.

Late one night in September 2023, a tow-truck driver set out to repossess a Dodge Journey registered to Jonathan Young.[1] After the driver located the vehicle parked in a driveway on a residential street, he backed up to the car, latched onto it, and started to lift it. A few seconds later, the Journey's driver-side door swung upon, and out came Young—yelling profanities and firing what seemed to be several gunshots. The tow-truck driver released the car and drove off, unharmed, before returning a few minutes later with law enforcement. Young had fled, but two shell casings were recovered from the scene. Two days later, the driver identified Young from a photographic lineup.

Young was arrested on October 10, 2023, and charged with carjacking, possessing ammunition as a felon, and discharging a firearm during and in relation to a crime of violence. *See* 18 U.S.C. §§ 2119(1), 922(g)(1), 924(c)(1)(A)(iii). After a three-day trial, a jury convicted him on the felon-in-possession count only. *See id.* § 922(g)(1).

Young was no stranger to the federal court system. Back in 2007, he pleaded guilty to interfering with commerce by robbery and to possessing (and brandishing) a firearm during a crime of violence. *See* 18 U.S.C. §§ 1951(a), 924(c)(1)(A)(ii). For those crimes, he was sentenced to 184 months' imprisonment and five

---

[1] Because Young challenges the sufficiency of the evidence, we recite the facts in the light most favorable to the prosecution. *See United States v. Louis*, 146 F.4th 1328, 1339 (11th Cir. 2025).

years of supervised release.  His supervised-release term began in August 2020—but it didn't last long, and Young found himself back in custody within the year.  After finding that Young violated his supervised-release conditions in August 2021, the district court sentenced him to time served (107 days) and reimposed a three-year term of supervised release.

That meant Young was on supervised release at the time of the tow-truck incident.  So in March 2024, a probation officer recommended that Young's supervised release be revoked for the second time.  The probation officer's petition alleged that Young committed fourteen supervised-release violations—seven of which related to the tow-truck incident.  The other seven violations related to unindicted conduct: battering a detainee, testing positive for marijuana, skipping drug testing, failing to alert probation when he was questioned by a law enforcement officer, lying to probation, leaving the judicial district without probation's permission, and failing to maintain employment.

The district court consolidated Young's sentencing hearing for his § 922(g)(1) conviction with his supervised-release revocation hearing.  When the time came, though, the district court mostly focused on Young's sentence for the § 922(g)(1) conviction.  It sentenced him to 100 months' imprisonment, followed by a three-year term of supervised release.

After the court announced that sentence, it briefly turned to the revocation of Young's supervised release.  The district court announced that the "defendant has violated the terms and

conditions of supervised release" and that a 60-month sentence was "appropriate." A few days later, the district court issued a corrected judgment, which explained that the "Court found the defendant in violation of his supervised release based on the conduct/conviction in his newly-indicted case," that is, his § 922(g)(1) conviction.

Young appealed, challenging (1) his § 922(g)(1) conviction on sufficiency-of-the-evidence grounds, (2) the district court's decision to revoke supervised release, and (3) the reasonableness of the sentence imposed upon revocation.

## II.

Young first argues that the prosecution failed to present sufficient evidence to support a jury finding that he knowingly possessed ammunition under 18 U.S.C. § 922(g)(1). We disagree.

We review de novo whether sufficient evidence supports a conviction, viewing the evidence and drawing all reasonable inferences in the prosecution's favor. *United States v. Doak*, 47 F.4th 1340, 1354 (11th Cir. 2022). The "evidence is insufficient only if no reasonable trier of fact could find guilt beyond a reasonable doubt." *United States v. Louis*, 146 F.4th 1328, 1339 (11th Cir. 2025) (quotation omitted).

Section 922(g) makes it unlawful for certain individuals—including felons—to possess ammunition. To obtain a conviction, the government must show (among other things) that Young knowingly possessed ammunition as a convicted felon. *See Rehaif v. United States*, 588 U.S. 225, 227, 237 (2019). No one disputes Young's status as a convicted felon, so the only question is whether

a reasonable jury could find that he knowingly possessed ammunition.  It could.

To start, the tow-truck security camera footage—which the prosecution played for the jury—captured the incident in its entirety.  The jury watched as the tow-truck approached Young's car, latched onto it, and started to lift it.  It watched (and heard—the video had sound) as a man exited from the driver-side door, shouted "what the f*** you doing," and fired what sounded like two shots.  It watched as the man continued to shout at the tow-truck before it released the car and drove away.  And in addition to the video, which showed the man's face—the jury also heard testimony from the tow-truck driver himself, who identified Young from a photo lineup two days after the incident.

That's not all—the jury learned that two shell casings were recovered from the scene shortly after the incident.  There was testimony that a "ShotSpotter" sensor system used by the local police department detected two gunshots fired at a date, time, and location consistent with the footage and the tow-truck driver's testimony.  And the jury heard Young on a jail phone call, asking the person on the line whether the police found any "poopins" or "doodles" around the area and wondering how the driver "pointed" him out "in the dark."  A police officer testified that, although he hadn't heard those specific terms before, it was "immediately obvious" to him that Young was referencing the "casings left behind from when he fired the pistol" and the tow-truck driver's ability to identify him.  Based on all that evidence—

the video, the testimony, the jail call, and the shell casings—a rational jury could conclude that Young had knowingly been in possession of ammunition.

Young resists that conclusion, arguing that the government's case rested on "pure speculation." He points to several facts: that neither the firearm nor the bullets were recovered, that the police did not properly secure the scene, that the shell casings were not tested for DNA evidence, and that the incident occurred in a high-crime area. These facts, he says, cast doubt on the supposed "link" between Young and "the random shells found on the ground." But this argument is nothing more than a request to reweigh the evidence in his favor. The absence of certain evidence "linking" him to the crime is irrelevant so long the government provides enough evidence—whether direct or circumstantial—to support the jury's verdict. *See United States v. Beach*, 80 F.4th 1245, 1256 (11th Cir. 2023).

Because there is a "reasonable basis in the record" for the jury's verdict here, we must sustain it. *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quotation omitted). We thus reject Young's sufficiency-of-the-evidence challenge to his § 922(g)(1) conviction.

## III.

Young next argues—and we agree—that the district court violated the Federal Rules when it revoked his supervised release and that it imposed an unreasonable sentence.

Starting with the district court's decision to revoke Young's supervised release, we review this challenge for plain error because Young failed to object on this basis below. *See United States v. Owen*s, 96 F.4th 1316, 1320 (11th Cir. 2024). That demanding standard requires that he show "not only that the error was plain but also that it affected his substantial rights." *Id.* (quotations omitted). Even then, we have discretion to correct only those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Clotaire*, 963 F.3d 1288, 1292 (11th Cir. 2020) (alteration adopted and quotation omitted).

Young overcomes that demanding standard here. Federal Rule of Criminal Procedure 32.1 incorporates the "minimal due process" protections that are owed to defendants in revocation proceedings. *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). That rule requires district courts to hold a revocation hearing "within a reasonable time." Fed. R. Crim. P. 32.1(b)(2). At that hearing, the defendant is entitled to, among other things, disclosure of the evidence against him, an opportunity to "present evidence," and the chance to "make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(A)–(b)(2)(E).

The district court scheduled Young's revocation hearing for the same date and time as his sentencing for his § 922(g)(1) conviction—but it was a hearing in name only. The district court's attention to the supervised-release issue went like this:

> Now as to the sentence in Case No. 0720038, final
> revocation of supervised release, the Court has

carefully considered the statements of all parties and the information contained in the violation report. The Court finds the defendant has violated the terms and conditions of supervised release and, hereby, revokes the period of supervised release. The Court has determined that a sentence within the guideline range is appropriate.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court the defendant, Jonathan Young, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 60 months, consecutive to any sentence imposed in Docket No. 24-20055-Criminal-Martinez. No supervised release to follow.

The probation officer's petition alleged that Young had committed fourteen supervised-release violations, yet the district court addressed none of them. It did not disclose the evidence that supported any of those allegations, nor did it give Young the opportunity to respond to them or offer mitigation evidence. The parties agree—and we do too—that the district court plainly erred by failing to conduct a proper revocation hearing under Rule 32.1(b)(2). We thus vacate the revocation of supervised release, and remand for the district court to either hold a revocation hearing or obtain from Young a waiver of his right to a hearing. *See* Fed. R. Crim. P. 32.1(b)(2).

That leaves the 60-month sentence the district court imposed for the supervised-release violation. Young asks us to vacate that sentence, arguing that the district court committed procedural error by failing to calculate the Guidelines range.[2] He's right again. A district court commits a "significant procedural error" by "failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Here, the district court "determined that a sentence within the guideline range"—60 months' imprisonment—was "appropriate." But the court provided no basis for that sentence, as neither the court nor probation identified the applicable Guidelines range or explained how it had been calculated. Because we are left without a "meaningful" record on appeal to review the sentence's reasonableness, we vacate it and remand for resentencing. *Id.* at 50.

★    ★    ★

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[2] Because we find that the district court plainly erred, we need not decide whether Young preserved this specific procedural-reasonableness argument by objecting generally to the sentence below on "procedural and substantive reasonableness grounds."