[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 13-11025
Non-Argument Calendar

D.C. Docket No. 8:01-cr-00046-SDM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN JEFFERY CARR,

Defendant-Appellant.

Appeal from the United States District Court for
the Middle District of Florida

(July 29, 2014)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

John Carr appeals the revocation of his supervised release and imposition of a 36-month sentence, pursuant to 18 U.S.C. § 3583(e).  After review of the record and the parties' briefs, we affirm.

## I.  BACKGROUND

### A.    Conviction and Sentence

In 2001, Carr pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), a class B felony.  Carr received a 92-month sentence, followed by 60 months of supervised release.  After completing his term of incarceration, Carr began his term of supervised release.

### B.    First Petition for Revocation

Carr violated the terms of his supervised release several times.  As a result, in March 2012, the probation officer filed a petition to revoke Carr's supervised release.  The petition alleged that Carr violated the terms of his supervised release in eight ways:  (1) using marijuana illegally; (2) failing to notify the probation officer within 72 hours after being arrested or questioned by a law enforcement officer; and (3) being convicted of six new crimes (driving with a suspended or

revoked license (four times), possessing more than one Florida driver's license, and not having a valid driver's license).[1]

## C.    First Revocation Hearing

On October 1, 2012, the district court held a revocation hearing.  At that hearing, Carr admitted to committing the eight violations alleged in the probation officer's petition.

After hearing from the prosecutor, defense counsel, the probation officer, and Carr, the district court decided not to revoke Carr's supervised release at that time.  Instead, the district court offered Carr "a bit of a deal."  In exchange for Carr's word that he could complete the remaining term of his supervised release "uneventfully," the district court agreed to "extend [Carr] that opportunity."  The district court warned Carr, however, that he could "bet on" being incarcerated if he was brought before the court for further violations of the terms of his supervised release.

The district court continued the revocation hearing.

---

[1]The government withdrew one additional alleged supervised-release violation for driving with a suspended license.

**D.    Amended Petition for Revocation**

Approximately seven weeks later, on November 18, 2012, Carr violated the terms of his supervised release by breaking into his ex-girlfriend's home through a window, battering her, and damaging her phone when she tried to call for help.

Based on these acts, the probation officer amended the petition to revoke Carr's supervised release by adding three new violations.  The amended petition alleged that Carr violated his supervised release by engaging in three types of criminal conduct, namely:  (1) burglary of a dwelling, (2) domestic violence battery, and (3) criminal mischief.

**E.    Second Revocation Hearing**

On February 28, 2013, the district court resumed the revocation hearing that was continued in October 2012.  Carr pled "not true" to the three supervised release violations that were predicated on his November 2012 conduct.

The district court conducted a lengthy, evidentiary hearing to determine whether Carr violated the terms of his supervised release.  In that hearing, several witnesses to the November 2012 burglary and battery testified:  the victim (Carr's ex-girlfriend and the owner of the home that Carr entered by force), the victim's friend (who was present during the November 2012 break-in), the responding police officer, and a 911 dispatch officer.

4

Shereka Watson, the victim and Carr's ex-girlfriend, testified that Carr kicked in a window air conditioning unit in her home's living room; entered her home through that window; went to her bedroom; "rough[ed] [her] up" by grabbing her, shaking her, and throwing her on the bed; yelled and cussed at her; and when she tried to call 911, grabbed her phone and threw it on the floor. Watson's friend offered substantially similar testimony.

The responding police officer testified that, on the day of the incident, Watson and her friend made statements consistent with their courtroom testimony. And, the government offered Watson's sworn, written statement, which she prepared for the police officer on the date of the incident. Watson's written statement also corroborated the testimony presented at the hearing.

The 911 dispatch officer testified that her office received a call from Watson stating that Carr had kicked in a window air conditioning unit, entered Watson's residence, "jumped" on her, and fled the scene. A 911 call log, made contemporaneously with that call, substantially corroborated this testimony.

The government moved to admit a recording of the 911 call into evidence. Carr objected on the grounds that that the 911 call was unreliable hearsay because it was made after Carr left Watson's residence and, therefore, there was no ongoing emergency to render the statements in the call reliable. The district court admitted

5

the 911 call, stating that the call was "comfortably within the realm of sufficiently reliable" evidence. The 911 call was consistent with the other testimony and evidence presented at the hearing.[2]

After considering all of the evidence relating to the November 2012 incident, the district court found that the government had proven by a preponderance of the evidence that Carr committed the three contested violations: burglary of a dwelling, domestic violence battery, and criminal mischief.

## F.    Probation Officer's Violation Report

In February 2013, the probation officer prepared a probation violation report that (1) outlined the procedural history in Carr's case; (2) described Carr's supervision history, including his supervised release violations; and (3) provided the district court with sentencing options based on statutory provisions and guidelines calculations. As set forth in that report, Carr's criminal history category at the time of his original sentencing was VI. This history included five scored offenses that included multiple convictions for possessing and selling cocaine and resisting arrest.

---

[2]Watson identified herself as the speaker in the 911 recording.

Ten of Carr's eleven supervised release violations qualified as Grade C violations, but the burglary of a dwelling offense qualified as a Grade A violation under U.S.S.G. § 7B1.1(a)(1).

Based on his criminal history category of VI and commission of a Grade A violation, Carr's advisory guidelines range for revocation purposes was 33 to 41 months' imprisonment. See U.S.S.G. § 7B1.4(a)(1). However, because the maximum statutory penalty was 36 months' imprisonment, the applicable guidelines range became 33 to 36 months' imprisonment. See 18 U.S.C. § 3583(e)(3).

## G.    Carr's Sentence

The district court adopted the 33- to 36-month advisory guidelines range from the probation officer's violation report. Carr requested a 12-month sentence on the grounds that his criminal history category of VI substantially overrepresented his criminal history. The government requested a 36-month sentence.

The district court heard from Carr and Carr's mother in mitigation. The district court then "considered the policies and Guidelines of the United States Sentencing Commission"; the "advisory guideline range"; Carr's personal and criminal history, including his "consistent inability to comply with criminal law"

7

and "the terms of [his] probation and . . . supervised release" in state and federal court; and the need to protect the public. The district court noted that Carr was not "very susceptible to deterrence" given that he violated the terms of his supervised release "so soon after" the district court had shown him leniency by declining to incarcerate him based on earlier supervised-release violations.

Ultimately, the district court sentenced Carr to a 36-month guidelines sentence with no supervised release. Carr now appeals.

## II. DISCUSSION

### A.    Evidentiary Challenge[3]

Carr argues that the district court erred by admitting the 911 call at Carr's second revocation hearing because (1) the call was unreliable hearsay and (2) its admission violated Carr's Confrontation Clause rights.

"Although the Federal Rules of Evidence do not apply in supervised release revocation hearings, the admissibility of hearsay is not automatic." United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994). In deciding whether to admit hearsay testimony, the court must (1) balance the defendant's right to confront

---

[3]We review constitutional challenges de novo. United States v. Cunningham, 607 F.3d 1264, 1266 (11th Cir. 2010). We review evidentiary rulings for an abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). A district court abuses its discretion if it applies an incorrect legal standard or makes findings of fact that are clearly erroneous. United States v. Wilk, 572 F.3d 1229, 1234 (11th Cir. 2009).

8

adverse witnesses against the grounds asserted by the government for denying confrontation and (2) ensure that the hearsay statement is reliable. Id.

Assuming, without deciding, that the contested 911 call contained hearsay, the call's admission did not violate Carr's right to confront the 911 caller and was otherwise reliable. Therefore, the district court did not abuse its discretion by admitting the 911 call into evidence.

First, Watson, the declarant in the 911 call, testified at the revocation hearing and was subject to cross-examination. Therefore, Carr's right to confront Watson was not violated. See Crawford v. Washington, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004) (noting that a defendant's right to confront the declarant is satisfied where the declarant appears for cross-examination).

Second, the statements in the 911 call were reliable. Most, if not all, of the evidence submitted at the revocation hearing—e.g., the 911 call log; Watson's testimony; Watson's written statement; Watson's friend's testimony; the responding police officer's testimony; and the photographic evidence from the scene—corroborated the statements in the call. See United States v. Gordon, 231 F.3d 750, 761 (11th Cir. 2000) (stating, in the sentencing context, that materially consistent evidence provides adequate indicia of reliability of hearsay statements).

9

Finally, even assuming arguendo that the district court erred in admitting the 911 call, the aforementioned corroborating evidence overwhelmingly establishes that Carr violated the conditions of his supervised release and, therefore, any evidentiary error regarding the 911 call was harmless. Frazier, 26 F.3d at 114 (noting that an evidentiary error is harmless where the properly considered evidence overwhelmingly demonstrates that the defendant breached the terms of his supervised release).

## B.    Reasonableness of the Sentence[4]

Carr also argues that his sentence is procedurally and substantively unreasonable because the district court (1) did not treat the Guidelines as advisory and (2) abused its discretion in weighing the 18 U.S.C. § 3553 factors.

If the district court finds that the defendant violated a supervised release condition, the court may revoke the supervised release term and impose a prison term after considering certain factors set forth in 18 U.S.C. § 3553(a).[5] These

---

[4]"We review the sentence imposed upon the revocation of supervised release for reasonableness." United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008). Our reasonableness review applies the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007).

[5]Specifically, in a revocation proceeding, the factors the district court must consider include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training and medical care; (3) the advisory guidelines range and pertinent policy statements of the U.S. Sentencing

10

factors include consideration of the policy statements in Chapter 7 of the Sentencing Guidelines, which includes recommended ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006); U.S.S.G. § 7B1.4.

In reviewing for reasonableness, we first consider whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the relevant § 3553(a) factors and the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). The party challenging the sentence has the burden to show it is unreasonable. Id. at 1189.

As to the procedural reasonableness of his sentence, Carr asserts that the district court failed to treat the Guidelines as advisory because the district court stated that it had "no choice" but to impose a high-end guidelines sentence. Carr takes this "no choice" statement out of context. Before pronouncing Carr's sentence, the district court expressly stated that it had considered the "advisory guideline range" and the record indicates that the district court considered the relevant § 3553(a) factors. Only after considering "all those factors" did the

Commission; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution. See 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

11

district court state that it had "no choice" but to sentence Carr to 36 months' imprisonment to preserve the "integrity of the sentencing process." This was not procedural error. Therefore, Carr has failed to show that his sentence is procedurally unreasonable.

Carr also failed to demonstrate that his sentence is substantively unreasonable. The district court's 36-month sentence was within the applicable guidelines range of 33 to 36 months. We ordinarily expect a sentence within the guidelines range to be reasonable. See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

The district court considered many factors in reaching its decision, including Carr's personal and criminal history, Carr's consistent inability to comply with the criminal law and the conditions of his supervised release, the need for deterrence, and the need to protect the public. Considering Carr's extensive criminal history and repeated violations of the terms of his supervised release, we cannot say that the district court abused its discretion by "commit[ing] a clear error of judgment in weighing the § 3553(a) factors" and imposing a high-end, guidelines sentence. United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc). Therefore, Carr failed to show that his sentence is substantively unreasonable.

12

**C.    Standard of Proof**

Carr argues that the preponderance-of-the-evidence standard for evaluating supervised release violations is unconstitutional and that the standard should be proof beyond a reasonable doubt.

Carr's argument is foreclosed by this Court's precedent.  See United States v. Cunningham, 607 F.3d 1264, 1268 (11th Cir. 2010) (holding that a violation of supervised release need only be proven by a preponderance of the evidence). Thus, the district court used the appropriate standard when determining whether Carr violated the conditions of his supervised release.

**AFFIRMED.**