[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10516
Non-Argument Calendar

_____

D.C. Docket No. 3:94-cr-03136-RV-MD-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO EUGENE PRIDE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 5, 2014)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Mario Eugene Pride appeals his 48-month sentence of imprisonment,
imposed after the district court revoked his supervised release for the second time.

The revocation proceedings were based on a traffic stop during which drugs were found and were attributed to Pride by other passengers in the car. On appeal, Pride argues that the district court denied him due process by relying on the hearsay statements made by fellow passengers during the traffic stop. He also contends that insufficient evidence existed to show that he possessed the drugs with the intent to distribute them. As a result, Pride asserts, the district court abused its discretion and imposed an unreasonable sentence. After careful review, we affirm.

**I**.

In 1995, Pride was sentenced to 198 months of imprisonment to be followed by five years of supervised release for conspiracy to possess with intent to distribute cocaine and cocaine base. In August 2010, he began serving the first term of supervised release, which, after he repeatedly failed to comply with substance-abuse requirements, was revoked in May 2011. At that time, he was sentenced to twelve months of imprisonment to be followed by two years of supervised release. Pride began serving the second term of supervised release in May 2012. In January 2014, a probation officer filed an amended petition to revoke Pride's supervised release based on a traffic stop on January 31, 2013.

At Pride's revocation hearing, the government called one witness, Corporal Elizabeth Roberts of the Okaloosa County Sheriff's Department, who had conducted the traffic stop on January 31 and had arrested Pride. Roberts testified

2

that she stopped a car after seeing it make an illegal U-turn.  There were five occupants in the car:  Teresa Hobbs (the driver), Jane Armstrong, April Fleming, Pride, and one other person.  A drug dog was deployed around the car, and the dog alerted to the presence of narcotics.

Roberts testified that she observed a bulge in Fleming's pants when Fleming exited the car.  The bulge turned out to be a cigarette pack, which contained capsules of "Molly," and a prescription bottle, which contained "25 pieces of small crack cocaine rocks."  When asked by Roberts about the bulge, Fleming "immediately became upset" and said that Pride had given her both the cigarette pack and the prescription bottle when the car was pulled over and had told her to hide them.  Fleming also provided a contemporaneous written statement under oath to the same effect.  According to Roberts, as she was retrieving these items from Fleming, Armstrong told her that the items were not Fleming's.  Roberts further testified that, at some point, Hobbs told her that Pride said that "he was dirty" when they first observed the police car's flashing lights.  Pride denied ownership of the drugs found on Fleming but admitted to possessing a small amount of another drug referred to as "Spice."

Roberts further testified that the prescription bottle contained 3.8 grams of cocaine.  While she agreed that the amount of cocaine was consistent with personal use, she nevertheless arrested Pride for possession with intent to distribute because

3

the substance was crack cocaine, "there were 25 individual small rocks" of it, "and typically that's what you see as sold streetside" because it is "quick" and "easy to [sell]."

In his defense, Pride introduced transcripts of Fleming's and Armstrong's testimony at Pride's trial in state court, as well as the deposition testimony from Fleming, Armstrong, and Hobbs for that case, all of which allegedly contradicted Roberts's testimony at the revocation hearing about these witnesses' statements at the scene of the traffic stop. The allegedly contradictory testimony concerned whether Pride had given the drugs to Fleming and whether Pride had said that he was "dirty." According to Pride's counsel, the state of Florida dropped the charges against Pride because of the inconsistent testimony of Fleming and Armstrong.

The district court revoked Pride's supervised release and sentenced him to 48 months' imprisonment, the maximum allowable sentence under the circumstances. In explaining the sentence, the judge stated, "I think the most conclusive evidence to me is the testimony of Officer Roberts and the written statement given by Ms. Fleming immediately after she was taken into custody." The judge further explained,

> With respect to the conflict brought about by the recantation of two of those witnesses during the course of the trial, it's my experience now in over thirty years that that's becoming more and more common, and it certainly implies or reflects that there's some intimidation of the witnesses.

4

I'm not holding you [Pride] accountable for that, but I'm simply saying that that is what is implied by the facts. I don't think the system of justice can accommodate witnesses being treated in any way forced to change their testimony, but that is becoming more common.

In this case particularly the burden of proof is simply a preponderance of the evidence, and I don't have to be convinced beyond a reasonable doubt, but I'm absolutely convinced that these drugs found in that car on Ms. Fleming were yours and that you had been dealing drugs with them.

The quantities and the way these drugs were packaged, 25 in one little pill bottle, 3.8 grams, is tantamount to distribution—quantities of distribution amounts, particularly with the possession of other drugs on your possession or which you admitted were found in the vehicle as a part of this.

So consequently I find that you were responsible for the conduct or the conduct itself as a Grade A violation, and you are subject to the 48-month sentence.

The judge overruled Pride's various objections to the finding of a Grade A violation and the length of the sentence, stating that he "acknowledged there is a conflict in the evidence" but that he "totally discount[ed] the evidence given during the trial in light of the other evidence and the totality of the circumstances," which, according to the judge, "overwhelmingly outweigh[ed] the testimony at the trial." This appeal followed.

## II.

We review the district court's determination that a defendant violated the terms of his supervised release for an abuse of discretion. *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). A district court's findings of fact in a revocation hearing are reviewed for clear error. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). Clear error will be present when "we are left with a definite and firm conviction that a mistake has been committed." *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks omitted). "Where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted).

## III.

A court may revoke a defendant's term of supervised release and impose a prison sentence when it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). The Federal Rules of Evidence do not apply in supervised-release revocation proceedings, so hearsay statements may be admissible, provided certain minimal due-process requirements are met. *United States v. Frazier*, 26 F.3d 110, 113-14 (11th Cir. 1994). To comply with due-process requirements, generally, before

admitting hearsay testimony, the district court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. *Id.* at 114.

Pride expressly does not challenge the admissibility of the hearsay statements introduced through Roberts's testimony under *Frazier*. Rather, Pride limits his challenge to the district court's reliance on the allegedly unreliable hearsay statements as follows: "The more narrow, preserved, question here is whether the district court acted within its discretion to rely on contradictory, impeached unsworn hearsay to find Mr. Pride possessed with intent to traffic the small quantity of crack cocaine found in Ms. Fleming's possession so as to find a Grade A violation." Pride concedes that the district court could have revoked his supervised release based on his possession of Spice, which would have been a Grade C violation resulting in a lower guideline range.[1]

A defendant has a due-process right not to be sentenced or have his supervised release revoked based on false or unreliable evidence. *See United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (concerning sentencing); *Frazier*, 26 F.3d at 114 (concerning supervised release revocation). To prevail on

---

[1] The United States Sentencing Guidelines classify violations of supervised release into three grades. U.S.S.G. § 7B1.1(a). As relevant here, a Grade A violation is a federal, state, or local offense punishable by a term of imprisonment exceeding one year that is a controlled-substance offense. *Id.* § 7B1.1(a)(1). A Grade C violation is an offense punishable by a term of imprisonment of one year or less or a violation of any other condition of supervision. *Id.* § 7B1.1(a)(3).

such a due-process challenge, "a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *Ghertler*, 605 F.3d at 1269; *see also United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (applying this test to a probation revocation hearing and analogizing such hearings to sentencing hearings); *Frazier*, 931 F.2d at 113-14 (finding "no significant conceptual difference between the revocation of probation or parole and the revocation of supervised release").

Pride principally relies on *United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984), where this Court held that the district court denied the defendant due process by relying on hearsay statements at sentencing to increase the defendant's sentence. In *Reme*, one of the defendants, Pierrot, was convicted of transporting aliens into the United States without authorization. At sentencing, the government sought a more severe sentence based on its claim that Pierrot had thrown two men overboard during the commission of the offense. *Id.* at 1166. In support, the government called an agent with the Immigration and Naturalization Service ("INS") who testified to hearsay statements to that effect from a purported eyewitness and from Pierrot's codefendant. However, the eyewitness had testified under oath at trial that he did not see how the two men disappeared, and the codefendant did not testify. No other evidence was introduced at trial supporting the government's claim at sentencing. *Id.* Based on the hearsay statements, the

8

district court imposed "a sentence many times more severe than the average sentence." *Id.* at 1167.

On appeal, this Court held that, in the "narrow confines" of the case, the INS agent's hearsay testimony was so unreliable that the district court's reliance on it violated Pierrot's due-process rights. *Id.* at 1168. Specifically, this Court found that the hearsay statements in the INS agent's testimony lacked sufficient "indicia of reliability and were largely contradicted by other evidence in the trial record." *Id.* The codefendant's statement was unreliable because it was self-serving and uncorroborated, and the other witness's statement was directly contradicted by his trial testimony.

Here, Pride has not shown that his supervised release was revoked or that he was sentenced based on false or unreliable evidence.[2] *See Ghertler*, 605 F.3d at 1269. First and foremost, the sworn testimony on which Pride focuses is itself inconsistent, so this is not a situation like *Reme* where the hearsay testimony was largely contradicted by the rest of the record. We acknowledge, as the district court did, that some testimony given by the hearsay declarants at trial and during their depositions appears to contradict Roberts's testimony at the revocation hearing. Nevertheless, despite some factual discrepancies regarding precisely how

---

[2]   However, we do not think, as the government suggests, that simply affirming the district court on the grounds that the court credited the testimony of Roberts would resolve the due-process concerns implicated by the district court's reliance on the hearsay testimony.

the events in the car played out, both Armstrong and Fleming in either their trial or deposition testimony attributed the drugs found on Fleming to Pride, which was consistent with Roberts's testimony about their hearsay statements at the time of the incident.

Second, with regard to Roberts's testimony that Hobbs told her that Pride said that "he was dirty" when they first observed the police car's flashing lights, we note that Pride expressly does not challenge the credibility of Roberts with regard to this or any other testimony. Therefore, discounting Roberts from the equation, the court effectively relied on Hobbs's testimony that Pride made an admission against his own interest. Such a statement is not hearsay. Fed. R. Evid. 801(d)(2). Accordingly, the court did not err to the extent that it may have relied upon it.

Third, the statements of Hobbs, Fleming, and Armstrong made to Roberts and later recounted by Roberts in her testimony occurred at or immediately after the events to which they related. In *Reme*, we found that statements that "followed closely on the events at issue . . . were more likely to be based on fresh recollections." *Reme*, 738 F.2d at 1168; *see* Fed. R. Evid. 803, advisory comm. note to para. (1) & (2) ("[S]ubstantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation."). The same is true of the only hearsay statement that the district court explicitly relied upon—

Fleming's written statement on the date of the traffic stop, which was sworn and under oath. *See Taylor*, 931 F.2d at 847 ("[T]he defendant bears the burden of showing that the court explicitly relied on the [hearsay evidence]."). This written statement also matches Roberts's testimony about the events. By contrast, the statements testified to by the INS agent in *Reme* occurred approximately one year after the events. *Reme*, 738 F.2d at 1168.

The district court likewise reasonably discounted the reliability of the trial and deposition testimony, in light of the length of time that had passed between the events and that testimony. In addition, both Armstrong and Fleming admitted in their later trial and deposition testimony to having been drinking heavily on the night of the incident and to having a poor recollection of the events at those later times.

At the very least, the fact pattern evidenced by the hearsay declarants' testimony during the state-court proceedings gave rise to two reasonable and different constructions of the facts: either Pride gave Fleming the drugs or he did not give Fleming the drugs. In such a case, "the factfinder's choice between them cannot be clearly erroneous." *Almedina*, 686 F.3d at 1315 (quotation marks omitted). In light of the totality of the circumstances, we cannot say that the district court abused its discretion or denied Pride due process by relying on the hearsay statements made to the arresting officer at the scene of the incident to the

11

exclusion of the muddled and inconsistent testimony later given by the hearsay declarants, who admittedly had poor recollections of the incident.

Finally, the district court did not clearly err in finding that Pride possessed the crack cocaine with intent to distribute. *See* 21 U.S.C. § 841(a). Pride objects that the district court made a speculative and unsupported finding of intent based on a small quantity of crack cocaine and the "inexpert" testimony of Roberts. But intent can be proven by circumstantial evidence, *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989), the government need only prove its case by a preponderance of the evidence, not beyond a reasonable doubt, *United States v. Cunningham*, 607 F.3d 1264, 1267 (11th Cir. 2010), and the Rules of Evidence do not apply to revocation proceedings, *Frazier*, 26 F.3d at 114.

Here, Roberts testified that the prescription bottle attributed to Pride contained 25 individual rocks of crack cocaine of a size that is "typically . . . what you see as sold streetside." The district court appears to have credited Roberts's testimony and found that the amount of crack cocaine and the way it was packaged was "tantamount to distribution." "The credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility." *Copeland*, 20 F.3d at 413. Based on Roberts's testimony, we cannot say that the court clearly erred in finding that Pride possessed the crack cocaine with intent to distribute.

For these reasons, we affirm the revocation of Pride's supervised release and the 48-month sentence of imprisonment imposed upon revocation.

**AFFIRMED.**