UNITED STATES of America

v.

Marcus POUGH.

Criminal Action No. 06–686.

United States District Court, E.D. Pennsylvania.

Signed March 23, 2015.

## ORDER

Arlene D. Fisk, Joseph A. Labar, U.S. Attorney's Office, Philadelphia, PA, Leo R. Tsao, Washington, DC, Richard W. Goldberg, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM RE SENTENCE IMPOSED ON VIOLATION OF SUPERVISED RELEASE*

BAYLSON, District Judge.

### I. Introduction

This case raises significant and novel constitutional issues considered before imposing a prison sentence for violation of supervised release, arising out of defendant's arrest and prosecution in state court for being the get-away driver in a murder. In finding the violation, this Court relies on defendant's incriminating testimony given during a suppression hearing in state court, even though the state court eventually suppressed defendant's confession because it was obtained in violation of defendant's state and federal constitutional rights. Subsequently, the prosecution of defendant was withdrawn.

On February 18, 2015, defendant was sentenced to 60 months' imprisonment for violating the terms of his supervised release. This Memorandum will explain the background and reasons for the Court's sentence.

Defendant pled guilty in 2006 in this Court to federal charges of possession of cocaine base with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime, and this Court sentenced him to 60 months imprisonment followed by a 5–year term of supervised release. This Court revoked Defendant's supervised release once before, in 2012, as a result of a guilty plea to receipt of stolen property in the Philadelphia Court of Common Pleas, an imposed a punishment of 60 days house arrest. The defendant continued on supervised release.

Following defendant's arrest by Philadelphia Police on June 27, 2012, on murder charges, the Probation Office of this Court lodged a detainer against the defendant as of June 29, 2012. ECF 47. This Court deferred any action pending resolution of the state court criminal proceedings. After the state trial court entered an order suppressing defendant's incriminating statement which he gave to Philadelphia police officers following his arrest, the Commonwealth of Pennsylvania, not having any other evidence, withdrew the criminal charges.

## II. Alleged Violation of Supervised Release

Following the state court disposition, the Probation Office requested a hearing, which took place on March 11 and 18, 2015. Defendant filed an objection (ECF 57) to the introduction of his statement to Philadelphia police in support of revocation and his testimony at the suppression hearing. Defendant argued that because the state court concluded his statement was obtained by coercion in violation of the Fifth and Fourteenth Amendments, the Fifth Amendment Due Process Clause likewise requires this Court to exclude the statement from its revocation proceedings. Defendant further argued that the Court should not penalize him for testifying in aid of a motion to suppress in state court by admitting this testimony against him in this federal revocation proceedings, and also that his testimony was not incriminating.

The government filed a response (ECF 59), arguing that although the Philadelphia Court of Common Pleas suppressed Defendant's incriminating statement after he was arrested admitting his involvement with the homicide, this Court should reach an independent conclusion that the statement was admissible, and also consider the incriminating testimony defendant gave in support his motion to suppress.

## III. State Court Proceedings

### A. Investigation

During the Philadelphia Police's investigation of the 2012 shooting of Damon Stafford, a suspect in an unrelated homicide identified Defendant's van as the get-away vehicle pictured in a surveillance video that captured Mr. Stafford's murder. Homicide Detectives located Defendant's vehicle and encountered Defendant in the course of impounding it. The detectives subsequently transported Defendant to the Homicide Unit at 8th and Race St., where he was arrested, interrogated, and recorded a formal written statement implicating himself as the getaway driver for the shooters, although the parties disagree as to the circumstances surrounding the questioning. As a result of his incriminating statement, Defendant was charged with conspiracy, murder, violations of the Uniform Firearms Act, and possession of an instrument of a crime.

### B. Suppression Hearings

Defendant moved to suppress his written statement on Fifth and Fourteenth Amendment grounds.[1] Judge Linda Carpenter first heard testimony and argument on Defendant's motion to suppress at a hearing on October 28, 2013. At this hearing, Detective William Sierra testified that Defendant was transported to the Homicide Unit by uniformed officers, was placed in an interview room, provided oral and written *Miranda* warnings at 6:54 p.m., was questioned by Detective Sierra and Detective Derrick Jacobs starting at 7:06 p.m., and signed a formal written state-

---

1. Defendant also moved to suppress his written statement under the Fourth Amendment as the "fruit of the poisonous tree" of an unlawful seizure of his van. The state court declined to suppress the statement on this basis.

ment admitting he was offered $10,000 to act as the getaway driver. On cross examination, Detective Sierra testified that Defendant arrived at homicide at 3:50 p.m. and that as a matter of practice, witnesses or suspects are not given *Miranda* warnings until after they have indicated in conversation with the police that they know something about the incident under investigation.

Defendant also testified at the first suppression hearing. He stated that when he first spoke with the detectives and they asked him to come with them for questioning, he believed he was required to go. He testified consistently with Detective Sierra that detectives placed him in an interrogation room after he arrived at the police station. He asserted they began questioning him at that time, without providing *Miranda* warnings, telling him "we know that this is the van that was involved in a shooting." ECF 57–1, at 10. Defendant claimed he disclosed to the detectives that a family member had been murdered while in a witness protection program. He testified that the detectives then promised him that if he made a statement about his involvement in the homicide, he and his family could enter witness protection where he would be provided with job assistance, he could have his van back, and he would be granted immunity from prosecution.

Defendant averred that he then gave an oral statement admitting involvement in the murder, was asked to repeat his statement while the detectives transcribed it, then signed the statement, including the *Miranda* waivers. During cross examination, Defendant denied that he knew who the shooters were or that he acted as their getaway driver. When the prosecutor

asked whether it was Defendant's van that was used as the getaway car in the homicide, Defendant's attorney objected to this as an attempt to explore the "veracity" of Defendant's statement, and Judge Carpenter sustained the objection. Ex. 1 at 72:1, Mar. 11, 2015 Hearing.

Judge Carpenter reopened the record at a second hearing on December 13, 2013, because the prosecutor had not been prepared to address Defendant's testimony that the detectives offered inducements in exchange for his statement. At the second hearing, Detective Jacobs testified that he and Detective Sierra did not promise Defendant immunity or relocation assistance, but only offered to ask the prosecutor to keep him in federal rather than state custody during any sentence Defendant received for the homicide or revocation of his federal probation. The prosecutor also recalled Detective Sierra, who likewise testified that Defendant requested federal custody, and also admitted that Defendant "knew he would go to prison" before he started to give a recorded statement he because he had already "mentioned he was the getaway driver." Ex. 2 at 28:21–30:17, Mar. 11, 2015 Hearing.

█ Defendant was the final witness in the second hearing. His counsel knew he was on federal supervised release but did not request any limitation on his testimony, or seek a ruling that defendant should not be cross examined on the veracity of his statement to police (as defense counsel had done at the first hearing). The defendant reiterated his prior testimony that the detectives offered promises of immunity and witness protection in exchange for his statement. On cross examination, the prosecutor began questioning Defendant, without objection [2], about the contents of

2. Upon review of the record, this Court is of the view that an objection to the questions quoted above was arguably proper on three grounds. First, they were not relevant; second, they were beyond the scope of direct examination, but if not, they were potentially incriminating of Defendant. Under the prin-

his written statement, resulting in the following exchange:

**Q:** You've had a chance to look at your statement again since the last hearing, right? Take a look at your confession again?

**A:** Yes.

**Q:** And when you mentioned that thing about how you were talking about getting your van back, you said specifically I'll never get that car back, will I; is that right?

**A:** Yes.

**Q:** And you knew that you were confessing and implicating the shooters on the homicide, right?

**A:** Yes.

**Q:** That you were only the getaway driver. You never even held the gun, right?

**A:** Never what?

**Q:** You're the getaway driver only, right? Meaning you didn't shoot the gun that day that killed Damon Stafford, right?

**A:** Yes.

**Q:** You identified Hak and New–Man as the shooters, not you, correct?

**A:** Yes.[3]

\* \* \* \*

**Q:** Just so that we're clear, you're telling Her Honor that you legitimately thought, despite being the driver in a murder for hire, that you were not going to be prosecuted for that?

**A:** Yes.

Hearing of December 13, 2013, pp. 44–45.[4]

Judge Carpenter held a final hearing on reconsideration of her ruling in favor of suppression on May 30, 2014. At the reconsideration hearing, Judge Carpenter reopened the record to hear testimony from representatives of the District Attorney's office regarding their policies on granting immunity, as well as from the detective who took Defendant's second statement regarding the homicide he witnessed, but in which he did not participate. Defendant did not testify at the reconsideration hearing.

## C. Judge Carpenter's Opinion

### 1. Findings of Fact

After the reconsideration hearing, Judge Carpenter issued a detailed written opinion granting Defendant's motion. Although Judge Carpenter did not entirely credit Defendant's version of events, she found that the detectives who questioned Defendant were "not forthcoming" in their

---

ciples of *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), by Defendant's counsel failing to object to questions relating to incriminating testimony given in open court, Defendant waived any privilege he may have had, and there is no constitutional barrier to using his testimony in a hearing on violation of supervised release—which, in any event, is not a "criminal prosecution." *Minnesota v. Murphy,* 465 U.S. 420, 429, 435 & n. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) ("[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself.").

3. At this point, defense counsel objected for the first time to a question from the prosecutor about whether Defendant had lied at the prior hearing, and Judge Carpenter responded that she could not recall whether Defendant's testimony from the prior hearing regarding the veracity of his statement to police contradicted his answers. *Id.* 43:17–45:5.

4. Defendant argues that this testimony did not concern his conduct at the time of the homicide, but rather, that he was describing the contents of his statement to the detectives. After agreeing there was some ambiguity, the Court concluded at the March 18 hearing that the overall context of the testimony warranted consideration of it as an incriminating admission.

testimony about their interactions with Defendant between his likely arrival at the station at 3:50 p.m. and 6:54 p.m., when the detectives testified they first administered *Miranda* warnings. *Id.* at 9. Specifically, the detectives did not admit until the second hearing that they engaged in "substantive conversation" with Defendant during these three hours and that they had promised to ask the district attorney to place Defendant in federal rather than local custody to allay his fears of violence. *Id.* Judge Carpenter emphasized that the detectives were never able to provide details of what "substantive conversation took place before the written statement," or to produce any notes or police paperwork documenting their questioning. *Id.* Based on her credibility determinations, Judge Carpenter made factual findings that 1) "*Miranda* warnings were not given at any time **before** 6:54 p.m.," and that 2) "some form of promises of favorable treatment, **in addition to** the acknowledged promises regarding federal 'custody,' were made." *Id.* at 13–14.

### 2. Conclusions of Law

Judge Carpenter held that Defendant's written statement was taken in violation of the Fifth Amendment because the detectives failed to give *Miranda* warnings until after he "had already provided the bulk of the information set forth in the formalized written statement, then induced him to sign a written waiver of *Miranda* protections using "improper promises of leniency." *Id.* at 18, 20. Judge Carpenter ruled further that Defendant's incriminating statements were involuntary in violation of the Due Process Clause as applied to the states through the Fourteenth Amendment because the "totality of the circumstances," including the detectives' promises of leniency and failure to provide timely *Miranda* warnings, "created a coercive environment ... that 'could drain a person's ability to withstand suggestion.'" *Id.* at 28–29.

The Commonwealth chose not to appeal Judge Carpenter's ruling and later dismissed all charges against Defendant stemming from the homicide.

## IV. Legal Standard

The parties agree that there are no reported appellate cases, and the Court has not found any, considering whether involuntary confessions, or in-court testimony at a suppression hearing, are admissible at revocation hearings.

### A. Fourth Amendment Exclusionary Rule

The government primarily relies on Third Circuit and Supreme Court cases holding that the Fourth Amendment exclusionary rule does not apply in revocation hearings. In considering whether physical evidence seized in violation of the Fourth Amendment was admissible in a revocation hearing, in *United States v. Bazzano*, the Third Circuit applied a balancing test governing extensions of the exclusionary rule that the Supreme Court first announced in *United States v. Calandra*. *United States v. Bazzano*, 712 F.2d 826, 831 (3d Cir.1983) (en banc) (citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). The *Calandra* balancing test compares the deterrence function of the exclusionary rule with the "potential injury to the ... role and functions of" the proceeding at which the evidence would be used. *Id.* at 831 (alteration in original). The *Bazzano* Court concluded that the deterrent effect of excluding unconstitutionally obtained evidence from revocation proceedings would be minimal because police's primary aim in performing a search is "generally to convict the target ... of a substantive offense." *Id.* at 832. On the other side of the scale, the impediment the exclusionary rule would impose in revocation proceedings, and thus to the "state's ability to protect society from additional

antisocial acts committed by" convicted probationers, would be significant. *Id.* at 834 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Consistently with the majority of the circuits that had already considered the issue, the Third Circuit concluded the exclusionary rule should not be extended. *Id.* at 831.

Later, in *Pennsylvania Bd. of Prob. & Parole v. Scott,* the Supreme Court affirmed that the Fourth Amendment exclusionary rule does not apply in state-court parole revocation proceedings. 524 U.S. 357, 359, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998); *United States v. Armstrong,* 30 F.Supp.2d 901, 906 (E.D.Va.1998), *aff'd,* 187 F.3d 392 (4th Cir.1999) (applying *Scott* to federal supervised release revocation proceedings despite Fourth Circuit precedent holding the exclusionary rule applies in that setting). Applying the *Calandra* test, the Supreme Court emphasized that the Fourth Amendment exclusionary rule is not itself a constitutional principle, but a deterrent of unconstitutional police conduct "applicable only where its deterrence benefits outweigh its 'substantial social costs.'" *Id.* at 362–63, 118 S.Ct. 2014. Parole, however, is only granted to convicted criminals based on the government's ability to "condition it upon compliance with certain requirements," which gives the state an "'overwhelming interest' in ensuring that a parolee complies ... and is

returned to prison if he fails to do so." *Id.* at 367, 118 S.Ct. 2014. The Court likened parole and probation revocation to informal administrative procedures to which it had previously declined to extend the rule, and characterized a parole officer's roles as "more supervisory than adversarial." *Id.* at 363, 118 S.Ct. 2014 (listing grand jury proceedings, civil tax proceedings, and civil deportation proceedings). The Court cautioned further that the exclusionary rule often results in "extensive litigation" that is incompatible with the informal nature of revocation proceedings. *Id.* at 366, 118 S.Ct. 2014.

### B. Suppression of Coerced Confessions

Defendant contends that because Judge Carpenter held the written statement to be involuntary, *i.e.* coerced, it cannot be used for any purpose. Defendant argues the Fourth Amendment cases on which the government relies follow a different analysis from that used to determine whether involuntary confessions clause are admissible. In support of his argument, Defendant relies on a number of Supreme Court cases that impose broad due process limitations on the use of involuntary confessions, in juxtaposition to the narrower limits on the use of confessions obtained by law enforcement officials who fail to comply properly with the teachings of *Miranda v. Arizona.*[5]

---

**5.** The argument that the bar on use of involuntary confessions as proof in criminal proceedings is distinct from the exclusionary rules applied to evidence seized in violation of the Fourth Amendment or otherwise voluntary confessions obtained without proper *Miranda* warnings is persuasive. Unlike the Fourth Amendment exclusionary rule, the exclusion of involuntary confessions from criminal proceedings serves more than a deterrent function; use of involuntary confessions is in itself a substantive constitutional violation. *United States v. Patane,* 542 U.S. 630, 640, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) ( "[T]he Self–Incrimination Clause contains its

own exclusionary rule.... Unlike the Fourth Amendment's bar on unreasonable searches, the Self–Incrimination Clause is self-executing."); *Chavez v. Martinez,* 538 U.S. 760, 761, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) ("[T]hose subjected to coercive interrogations have an automatic protection from the use of their involuntary statements in any subsequent criminal trial...."); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (using involuntary confession to impeach defendant's testimony in criminal proceedings violates right to due process). In *Mincey v. Arizona,* the Supreme Court held

## C. Evidence and Burden of Proof in Revocation Hearings

 The government correctly points out that the bar for revocation of supervised release is low, and that a court may refuse to delay a hearing pending resolution of the underlying case, as well as revoke supervised release after a defendant is acquitted of charges. *United States v. Poellnitz*, 372 F.3d 562, 566 (3d Cir.2004) ("A 'court can revoke probation when it is reasonably satisfied that the probation conditions have been violated, without the government being required to present proof beyond a reasonable doubt that the defendant committed the alleged acts.'" (quoting *United States v. Gordon*, 961 F.2d 426, 429 (3d Cir.1992))); *United States v. Babich*, 785 F.2d 415, 416–18 (3d Cir.1986) (reaffirming the holding of *United States v. Bazzano* that revocation proceedings need not be delayed to avoid forcing a choice by defendant to testify at the hearing or risk revocation before an acquittal); *United States v. Thompson*, 314 Fed.Appx. 797, 800 (6th Cir.2008) (independent investigation by probation officer not required for revocation even where defendant was acquitted of underlying state-court charges). As the Third Circuit explained in *United States v. Chambers*, a subsequent acquittal does not invalidate a revocation of supervised release because "probation may be revoked on the basis of conduct which falls short of criminal conduct," the burden of proof for revocation is lower than for conviction, and the revocation may be based on conduct that was not charged in state court. *United States v. Chambers*, 429 F.2d 410, 411 (3d Cir.1970).

Defendant counters that despite the relaxed procedural requirements of revocation hearings, some due process guarantees still apply. *United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir.2009). Defendant points to a line of Eleventh Circuit cases holding that revoking supervised release "based on false or unreliable evidence" violates due process. *United States v. Pride*, 595 Fed.Appx. 863, 867 (11th Cir.2014) (citing *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010); *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir.1994)). Similarly, in *U.S. v. Lloyd*, the Third Circuit explained that although the Federal Rules of Evidence, including those limiting use of hearsay, do not apply to revocation proceedings, this does not lead to the conclusion that "hearsay evidence is *ipso facto* admissible." 566 F.3d 341 (3d Cir.2009). Rather, in recognition of a defendant's limited Fourteenth Amendment due process right to confront witnesses during revocation proceedings, Fed.R.Crim.P. 32 imposes a balancing test that weighs the reliability of the hearsay evidence against whether there is "good cause" for the government's failure to produce the declarant as a witness. *Id.* at 345.

involuntary statements are not subject to the "trustworthiness" test applied to otherwise voluntary confessions obtained without sufficient *Miranda* warnings, and instead concluded that "any criminal trial use" of these statements denies due process. 437 U.S. at 385, 98 S.Ct. 2408 (1978). Involuntary confessions are not excluded solely to deter coercive law enforcement practices; nor are they prohibited only because they are "untrustworthy." *Rogers v. Richmond*, 365 U.S. 534, 540–41, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). Rather, use of involuntary statements against a defendant is inconsistent with the "underlying principle ... that ours is an accusatorial and not an inquisitorial system"; consequently, when a defendant is "subjected to pressures to which, under our accusatorial system, an accused should not be subjected ... the procedures leading to his conviction had failed to afford him that due process of law." *Id.* at 541, 81 S.Ct. 735. The Court need not, however, decide what import these principles have in revocation proceedings because it will rely solely on Defendant's testimony during the suppression hearing to find a violation.

Defendant contends the limited due process guarantees that apply to revocation proceedings require the Court to exclude his involuntary statement based on the widely recognized principle that coerced confessions are inherently unreliable—and in any case, there is little external evidence to corroborate Defendant's statement. *E.g., Jackson v. Denno,* 378 U.S. 368, 386, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (noting the "probable unreliability" of coerced confessions).

## V. Analysis

 After hearing the arguments of counsel at the two hearings of the violation of revocation issue, the Court concludes that defendant's own testimony under oath at his suppression hearing was properly considered as establishing a violation of supervised release. Under the authority of *Minnesota v. Murphy,* as noted in footnote 2 above, the fact that defendant made an incriminating statement, notwithstanding he arguably had privilege against self-incrimination at that time, and was then represented by counsel, cannot be ignored and is not subject to any constitutional protection or exclusionary rule of evidence. *Minnesota v. Murphy,* 465 U.S. 420, 429, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) ("[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself."). A supervised release proceeding, which follows a criminal conviction, is not subject to the same rules of evidence, or constitutional protections, that apply at a trial where finding guilt is subject to proof beyond a reasonable doubt by the prosecution. *Id.* at 435 n. 7, 104 S.Ct. 1136 ("Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. Just as

there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer." (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *United States v. Johnson,* 455 F.2d 932, 933 (5th Cir.1972), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972))). Instead, Defendant is still under the Court's sentence, and subject to Court supervision. His conduct is regulated by many rules including, quite obviously, that he not commit any other crimes. When evidence of Defendant's crime became part of a public court record, there are no legal prohibitions or public policy grounds that would justify this Court to ignore this evidence. Alternatively, if the balancing test endorsed by the Supreme Court and the Third Circuit for extending the Fourth Amendment exclusionary rule is applicable, the same result applies.

Thus, the Court relies on Defendant's own incriminating statement at a suppression hearing, which clearly established that he was involved as a get-away driver after a murder took place and that this conduct was in violation of the terms of his supervised release.

## VI. Review of Judge Carpenter's Findings

The Court considered the government's contention that Judge Carpenter's ruling has no bearing in this federal revocation proceeding in which federal constitutional and evidentiary standards apply. *United States v. Stiver,* 9 F.3d 298, 300 (3d Cir. 1993) ("[E]vidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." (quoting *United States v. Rickus,* 737 F.2d

360 (3d Cir.1984))). In view of the above discussion, this issue need not be decided.