[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10649

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JULIA CHRISTINA NASH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cr-00073-SPC-KCD-1

_____

Before NEWSOM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Julia Nash appeals her five-year probation sentence after her conviction for theft of government funds, 18 U.S.C. §§ 641 and 2. On appeal, Nash argues that the district court erred by imposing thirteen discretionary conditions of probation which were not orally pronounced at sentencing. After careful consideration, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2021, a grand jury charged Nash with one count of theft of government funds, 18 U.S.C. §§ 641 and 2. A jury found her guilty at trial.[1]

Before sentencing, a probation officer prepared a presentence investigation report ("PSI") which described Nash's offense conduct as follows. In July 2020, the Social Security Administration ("SSA") Office of the Inspector General received an anonymous complaint stating that G.R., a SSA beneficiary who had passed away in 2007, was still receiving SSA benefits. The SSA began an investigation. The anonymous complaint identified G.R.'s sister as the individual who had been accessing G.R.'s benefits after she had passed. G.R.'s sister admitted to investigators that she had accessed the bank account to which G.R.'s SSA benefits continued to be deposited after her death by using G.R.'s debit card, but she stated

---

[1] Nash does not challenge her conviction on appeal.

that she had only used the funds for her mother until her mother died in 2020. She informed investigators that she did not have the debit card at the time, and that two of her nieces, including Nash, primarily accessed the account and likely had the debit card associated with the account.

When investigators spoke with Nash, she admitted to accessing her late aunt's benefits with her debit card several times after her death. She also admitted that she knew it was wrong and that she had told her sister to inform the SSA of the fraud the year before, which her sister had done through the anonymous complaint. Evidence at trial showed that Nash had accessed G.R.'s SSA benefits multiple times between 2018 and 2020. The government established that Nash obtained $23,550 in benefits payments to which she was not entitled.

The PSI stated that Nash faced a maximum term of imprisonment of 10 years. Based on a total offense level of 10 and a criminal history category of III, the PSI calculated Nash's guideline range of imprisonment to be 10 to 16 months. It further found that Nash's guideline term of supervised release was one to three years with a maximum of three years. Finally, it found that Nash was eligible for a minimum of one and a maximum of five years' probation. It noted that either a fine, restitution, or community service must be imposed as a condition of probation.

The PSI noted that Nash's "personal history and characteristics and/or the nature and circumstances of [her] offense" might

warrant several special conditions of supervision, but it, notably, did not recommend any "standard" conditions of supervision.

At sentencing, the district court found, based on the undisputed factual statements and guidelines calculations in the PSI, that Nash's offense level was 10, her criminal history category was III, and her advisory guidelines range was 10 to 16 months' imprisonment, to be followed by 1 to 3 years of supervised release to follow. The parties then told the court that they were jointly recommending a sentence of five years' probation, with six months of that term being served on home detention. The court then explained that it agreed with the parties that five years' probation was "the appropriate sentence."

It also explained that, while on probation, Nash would need to comply with "the terms and conditions that" it set for her and that, if she violated those terms, she "c[ould] be subjecting [her]self to a prison term." Then, it stated that, while "on probation, [Nash will] need to comply with the mandatory and standard conditions adopted by the [c]ourt in the Middle District" of Florida. It explained that Nash would be subject to special conditions, which it read aloud to the parties. The court also ordered that Nash would be on home detention for the first six months of her probation term and that she would be required to pay restitution to the SSA.

The district court then asked the parties whether they had any objections and neither party did. The district court entered a written judgment after sentencing. That judgment contained thirteen "standard conditions of supervision" as well as mandatory

23-10649                Opinion of the Court                5

conditions and the special conditions imposed and orally pro-
nounced at sentencing.  Nash appealed.

## II. STANDARDS OF REVIEW

When a defendant fails to object to a sentencing error, we
ordinarily review for plain error.  *See United States v. Hayden*,
119 F.4th 832, 838 (11th Cir. 2024).[2]  In any event, "we decide
*de novo* whether a defendant 'had no opportunity to object at sen-
tencing because the court included the [condition] for the first time
in its written final judgment.'"  *Id.* (alteration in original) (quoting
*United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023)).
When a defendant is not given such an opportunity, we review
their challenge *de novo*.  *See Rodriguez*, 75 F.4th at 1246 n.5; *see also*
*United States v. Bull*, 214 F.3d 1275, 1278 (11th Cir. 2000).

## III. DISCUSSION

18 U.S.C. § 3583(d) imposes several mandatory conditions of
supervised release and provides that the court may order further

---

[2] *Rodriguez* and *Hayden* were both cases where defendant-appellants chal-
lenged the imposition of supervised release conditions that were not orally
pronounced at sentencing.  We have not yet, in a published opinion, applied
those cases in the probation context.  For the reasons explained below, the
conditions of supervised release at issue in *Hayden* and *Rodriguez* and the con-
ditions of probation at issue here function nearly identically and implicate the
same due process concerns.  *See, e.g.*, *United States v. Campbell*, 473 F.3d 1345,
1348 (11th Cir. 2007) ("[T]his [C]ourt has held that probation revocation pro-
ceedings are 'conceptually the same' as supervised release revocation proceed-
ings." (quoting *United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994))).  Ac-
cordingly, we apply *Rodriguez* and *Hayden* here.

conditions in its discretion. 18 U.S.C. § 3583(d). In a parallel manner, 18 U.S.C. § 3563 imposes several mandatory conditions of probation and provides that the court may order further conditions in its discretion. 18 U.S.C. § 3563(a), (b). The Sentencing Guidelines list thirteen standard conditions of supervised release that are generally recommended, as well as several special conditions. U.S.S.G. § 5D1.3(c), (d). Similarly, the Guidelines provide thirteen standard conditions of probation that are generally recommended, and then several special conditions as well. U.S.S.G. § 5B1.3(c), (d).

A district court must orally pronounce any discretionary—*i.e.*, non-mandatory—conditions of supervised release at sentencing. *Rodriguez*, 75 F.4th at 1246-49. Failure to do so does not satisfy due process, even if there exists a standing order recommending those conditions of supervised release in the district, if the district court fails to reference that order or otherwise indicate that it was adopting conditions of supervised release beyond those mandated by statute. *Id.* at 1249. District courts can satisfy due process by referencing a written list of supervised release conditions because, by doing so, a defendant who is unfamiliar with those conditions can inquire about and challenge them. *Id.* at 1248-49. "For instance," a district court may permissibly "orally adopt the conditions of supervised release recommended in the defendant's PS[I] or in a standing administrative order." *Id.* at 1246, 1249.

When a defendant has notice that the district court is going to impose certain standard conditions—even if it does not specify which conditions—and the defendant fails to object, we review

23-10649               Opinion of the Court                    7

that challenge only for plain error.  *See Hayden*, 119 F.4th at 838-39. If the court's later written judgment does not conflict with the oral pronouncement of the conditions, the written judgment governs. *Id.* (citing *United States v. Purcell*, 715 F.2d 561, 563 (11th Cir. 1983)).

Here, we begin by reviewing *de novo* whether Nash had an opportunity to object to the challenged standard conditions of probation which were imposed in the judgment.  *See Rodriguez*, 75 F.4th at 1246 n.5; *Bull*, 214 F.3d at 1278.

We agree with the government that plain error review applies because Nash had an opportunity to object and raise any concerns about the conditions of probation that the district court was imposing.  The district court specifically stated that, while "on probation, [Nash will] need to comply with the mandatory and standard conditions adopted by the [c]ourt in the Middle District" of Florida.  After imposing Nash's sentence, moreover, it asked Nash whether she had any objections, and she did not. *Cf. United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990) (explaining that when a district court fails to fully elicit objections after imposing sentence, we will vacate and remand to give the parties a chance to raise their arguments), *overruled in part on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (*en banc*); *United States v. Mosely*, 31 F.4th 1332, 1334 (11th Cir. 2022) (same).  Under these circumstances, Nash "had an opportunity to object and request that the district court orally pronounce th[os]e conditions." *Hayden*, 119 F.4th at 838.  We, therefore, review Nash's appeal only for plain error.

Under plain error review, our review is more limited. "To establish plain error, a defendant must show that there was an (1) error, (2) that is plain, and (3) that affects substantial rights." *See United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022). "Where all three conditions are met, we may then exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

We do not find error. The court put Nash on notice that she would have to comply with the "standard conditions adopted by the [c]ourt" and then, in the written judgment, it listed those conditions. As we noted in *Hayden*, those same conditions were "listed in the publicly available judgment form" on the court's website and "track the standard conditions of supervised release in the relevant sentencing guideline." *Hayden*, 119 F.4th at 839; *see Form AO 245B Judgment in a Criminal Case*, U.S. DIST. CT. FOR THE MIDDLE DIST. OF FLA., at 10-11, https://www.uscourts.gov/sites/default/files/ao245b.pdf [https://perma.cc/5PHV-Q76Q]; U.S.S.G. § 5B1.3(c). Accordingly, as in *Hayden*, "[b]ecause the district court orally referenced the thirteen discretionary standard conditions of supervised release for the Middle District of Florida and because the oral pronouncement and written judgment do not conflict, [the district

23-10649                  Opinion of the Court                        9

court] did not err—much less plainly err . . . ."  *Hayden*, 119 F.4th at 838.[3]

## IV. CONCLUSION

For the reasons we have explained above, we affirm.

**AFFIRMED.**

---

[3] As a final note, we reiterate what we said in *Rodriguez*: "the oral in-court adoption of recommended conditions included in [a presentence investigation report] satisfies the oral pronouncement requirement." *Rodriguez*, 75 F.4th at 1248 n.7 (citing *United States v. Diggles*, 957 F.3d 551, 560-61 (5th Cir. 2020) (*en banc*)).  In this case, in other words, the probation office could have simply included the standard conditions of probation in Nash's PSI and then the district court could have orally adopted the PSI's list of conditions—simplifying this issue and providing Nash with additional notice and opportunity to object. *See* FED. R. CRIM. P. 32(e)(2) (explaining that generally the "probation officer must give [a] presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing . . . .").