[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14107

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEONTE M. WRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00290-WFJ-JSS-1

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Deonte Wright appeals the district court's order revoking his supervised release and sentencing him to 24 months' imprisonment.  He argues that the district court erred by (1) admitting evidence in violation of his Fifth Amendment due process rights and (2) failing to offer him the opportunity to allocute.  Wright's first argument provides no relief because any error made in admitting the contested evidence was harmless.  We therefore affirm the district court's revocation of Wright's supervised release.  But because the district court plainly erred by failing to personally extend Wright an invitation to allocute, we vacate the sentence and remand for resentencing.

## I.

In 2021, Deonte Wright was convicted for possession of a firearm and ammunition by a convicted felon and sentenced to 40 months' imprisonment, followed by 36 months' supervised release.  In June 2023, Wright began serving the term of his supervised release.  Less than three months later, St. Petersburg Police Department Officer Josiah French responded to a domestic battery call from Wright's estranged wife, Aaliyah.  Officer French's bodycam recorded Aaliyah's recounting of the events.  Wright and Aaliyah had recently been in an argument, and he came to her apartment to talk.  While Aaliyah was in the bathroom texting someone, Wright took her phone from her and

23-14107               Opinion of the Court                3

threw it in the toilet. Things escalated from there. Wright choked Aaliyah with both hands and pushed her into the wall, causing her to black out. Later, he slapped her in the face several times and went "on a rampage just finding stuff to destroy." Realizing that her phone was waterproof, he took scissors and smashed it until it was broken. He destroyed her MacBook, too, snapping it in half. Aaliyah's brother, Howard, witnessed the altercation. Howard told Officer French that he saw Wright punch Aaliyah and put both hands around her neck.

Wright shared a different version of events with Officer French. He said that Aaliyah invited him over. When they were both in the bathroom, he asked her if he could go through her phone. She gave him the phone, but when he actually looked through it, she grabbed him by the neck and tried to choke him. And when she couldn't get her phone back, she cut him with scissors. Wright insisted that Aaliyah "strangl[ed]" him first, and that he did not do anything "but put [his] hand up and that's it." He claimed the phone was smashed during the fighting and did not explain what happened to the laptop.

After Wright's arrest, the probation office petitioned to revoke his supervised release based on two Grade B violations: criminal mischief (for damaging Aaliyah's cell phone and laptop) and battery. The office later alleged an additional six Grade C violations for contacting Aaliyah while in prison. Wright contested the violations, and the court held a two-day revocation

hearing.  On day one, Officer French testified for the government. His testimony included several pieces of information:

- Aaliyah was upset and crying when Officer French arrived at her apartment.

- Officer French observed injuries "consistent with being choked" by hands on both sides of her neck.

- He took photos of the injuries (and these photos were admitted without any objection).

- Aaliyah's injuries were inconsistent with Wright's claims.

- Aaliyah's phone was damaged and broken, and her laptop was broken in two pieces.

- The laptop was covered in blood.

- Wright had a small cut on his right middle finger and two scratches on the right side of his neck.

- Wright's injuries were not consistent with his claim that Aaliyah choked him.

- Aaliyah was "much smaller" than Wright.

The government moved to admit Officer French's bodycam footage.  Wright objected, arguing that the footage contained hearsay statements from Aaliyah and Howard.  And unless they testified at the hearing, the admission would violate his "Fifth

Amendment due process confrontation rights." The district court admitted the evidence subject to the objection.

The government also presented evidence that Wright made several phone calls to Aaliyah while in prison awaiting his federal revocation hearing. Despite repeatedly placing the blame on Aaliyah, Wright admitted that he "fucked up" and that it was "partially [his] fault" because he grabbed her phone.

Lastly, the government offered evidence of Wright's extensive criminal history, including several criminal convictions resulting from acts of violence against a former romantic partner. To start, in 2014 Wright punched his partner in the face and threw a brick at her while she was in her car. The brick shattered the front windshield and struck her in the face. Roughly two months later, he squeezed the same woman's neck, causing her to lose her breath. And less than a month after that, he entered the woman's home without her permission, punched her in the face, and bit her shoulder. Just over a year later, he again struck the same victim in the face, this time while she was pregnant.

After all the evidence had been presented, the district court overruled Wright's objection to the bodycam footage. It determined that Aaliyah's and Howard's statements were reliable and that "the totality of the circumstances [did] not require" them to testify in person. The district court found that the government had proven two Grade B violations (battery and criminal mischief) and two Grade C violations (contacting Aaliyah while in prison) by a preponderance of the evidence. Because Wright

committed a Grade B violation, the Guidelines range was 21 to 24 months' imprisonment. Before imposing its sentence, the district court asked Wright's counsel whether Wright would like to allocute. After conferring with Wright, counsel stated that Wright did not wish to allocute. The district court sentenced Wright to 24 months' imprisonment, followed by 12 months of supervised release. Wright now appeals.

## II.

We review a district court's revocation of supervised release for abuse of discretion. *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). A district court may revoke a defendant's supervised release and impose a term of imprisonment if it finds that the defendant violated a condition of supervised release by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); *see Johnson v. United States*, 529 U.S. 694, 700 (2000).

When a defendant does not object to the district court's denial of his right of allocution at the time of sentencing, we review only for plain error. *United States v. Doyle*, 857 F.3d 1115, 1118 (11th Cir. 2017).

## III.

Wright makes two arguments on appeal: (1) that the admission of the bodycam footage containing Aaliyah's and Howard's statements violated his Fifth Amendment due process confrontation rights and (2) that the district court denied his opportunity to allocute by failing to address him directly. We address each in turn.

## A.

Neither the Federal Rules of Evidence nor the Sixth Amendment right to confrontation apply to supervised release revocation hearings. *See Frazier*, 26 F.3d at 114; *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015). But "the admissibility of hearsay is not automatic" because defendants "involved in revocation proceedings are entitled to certain minimal due process requirements." *Frazier*, 26 F.3d at 114. This includes "the right to confront and cross-examine adverse witnesses." *Id.* In "deciding whether or not to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. In addition, the hearsay statement must be reliable." *Id.* (citation omitted).

Wright contends that the district court did not properly conduct this balancing test. But we need not decide that question because any error the district court made in applying *Frazier* was harmless. "If admission of hearsay evidence has violated due process, the defendant bears the burden of showing that the court *explicitly* relied on the information. The defendant must show (1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) (citation and quotation omitted). If the properly considered evidence alone demonstrates that the defendant breached the terms of his supervised release, the error is harmless. *See Frazier*, 26 F.3d at 114.

Wright argues that without the out-of-court accusations, the evidence does not refute his self-defense claim because it "shows simply that a fight happened." Not so. The remaining evidence is more than sufficient to support the district court's determination that Wright breached the terms of his supervised release. Here is a sample: (1) photographs of Aaliyah's injuries; (2) Officer French's testimony that Aaliyah's injuries were "consistent with being choked" by hands and that both her and Wright's injuries were inconsistent with Wright's version of events; (3) Officer French's personal observation of the damage to Aaliyah's laptop and phone; (4) Wright's admission that he "fucked up" and that it was "partially [his] fault" because he grabbed Aaliyah's phone; (5) bodycam footage showing the difference in size between Aaliyah and Wright; and (6) Wright's extensive criminal history, which included several convictions for acts of violence against a former romantic partner.

Bottom line: there was an abundance of properly considered evidence that allowed the district court to determine that Wright more likely than not committed a Grade B violation. Any error made by the district court in admitting hearsay testimony was harmless.

**B.**

Wright also argues, and the government concedes, that the district court denied his opportunity to allocute when it failed to address him directly. Because Wright did not raise this objection in the district court, this Court reviews only for plain error. To

show plain error, Wright must show (1) an error that (2) is plain, (3) and affects his substantial rights. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). If all three of these conditions are met, we consider whether the error seriously affects "the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

"Allocution is the right of the defendant to make a final plea on his own behalf to the sentencing judge before his sentence." *United States v. Carruth*, 528 F.3d 845, 846 (11th Cir. 2008). "In any probation or supervised release revocation hearing, a defendant must be afforded an opportunity to make a statement and present any information in mitigation." *Id.* (quotation omitted). A sentencing court must "directly address the defendant and afford him or her the opportunity to personally address the court before imposing a sentence." *Id.* Inviting "only a defendant's lawyer to speak does not suffice. The court must personally extend to the defendant the right of allocution." *Id.* at 847.

Here, the district court only addressed Wright's counsel; it never directly addressed Wright. That was error. And because this Court's precedent is clear that statements made to counsel do not adequately protect the defendant's right to allocution, the error was plain. *See United States v. Perez*, 661 F.3d 568, 585 (11th Cir. 2011). The denial of a defendant's right to allocute affects the defendant's substantial rights "whenever the possibility of a lower sentence exists." *Id.* at 586. The district court's sentence of 24

months exceeded the lower end of the Guidelines range, 21 months, so the error affected Wright's substantial rights.[1]  And the final prong of plain error is satisfied because "denial of the right to allocute affects the fairness, integrity, and public reputation of judicial proceedings."  *Id.*

We therefore vacate Wright's sentence and remand to the district court for resentencing.  Wright, however, is "not entitled to an entirely new resentencing."  *United States v. George*, 872 F.3d 1197, 1209 (11th Cir. 2017).  He is entitled only to "an opportunity to allocute and have the court resentence him after he says what he wishes to say to the judge."  *Id.* (quotation omitted).

\*     \*     \*

We **AFFIRM** the district court's revocation of Wright's supervised release, **VACATE** the sentence, and **REMAND** for resentencing after Wright is given the opportunity to allocute.

---

[1] And even if a defendant receives "a sentence at the low end of his advisory guidelines range," he will still "generally be entitled to a presumption that he was prejudiced by the district court's failure to afford him his right of allocution."  *Doyle*, 857 F.3d at 1121.